**Not for Publication in West's Federal Reporter**

# United States Court of Appeals
## For the First Circuit

No. 07-1638

ONAN FLORES-COREAS,

Petitioner,

v.

MICHAEL B. MUKASEY, ATTORNEY GENERAL,

Respondent.

PETITION FOR REVIEW OF AN ORDER OF THE BOARD
OF IMMIGRATION APPEALS

Before

Lipez, <u>Circuit Judge</u>,
Selya and Siler,* <u>Senior Circuit Judges</u>.

<u>José A. Espinosa</u> on brief for petitioner.
<u>Peter D. Keisler</u>, Assistant Attorney General, Civil Division,
<u>Terri J. Scadron</u>, Assistant Director, Office of Immigration
Litigation, and <u>Greg D. Mack</u>, Senior Litigation Counsel, Office of
Immigration Litigation, on brief for respondent.

February 1, 2008

---

*Of the Sixth Circuit, sitting by designation.

**Per Curiam**.    In this immigration case, petitioner Onan Flores-Coreas, a citizen of El Salvador, seeks judicial review of a final decree of the Board of Immigration Appeals (BIA) dated April 3, 2007.  That decree affirmed a decision of an immigration judge (IJ) declaring the petitioner ineligible for asylum, withholding of removal, and/or protection under the United Nations Convention Against Torture (CAT).  For the reasons that follow, we deny the petition.

The relevant facts are straightforward.  The petitioner, now in his late twenties, was born in El Salvador.  After spending much of his childhood there, he lived for a period of time in the United States.  He then repaired to El Salvador.  The events at issue in this proceeding transpired after he had returned to his homeland.

The IJ credited the petitioner's testimony, so we start there.  The petitioner testified to a number of negative encounters with gang members in El Salvador from and after 1999.  These encounters included a robbery and a concomitant assault, at least one attempt to recruit him as a gang member, efforts to extort money, and a variety of threats.  The petitioner attributed these maraudings to his active membership in a liberal apostolic Christian church (El Salvador is a largely Catholic country) and to his refusal to join a gang.  He also admitted, however, that (i) the gangs aspired to recruit individuals who, like himself, owned

-2-

automobiles, and (ii) the gangs also aspired to recruit individuals who, like himself, had lived in the continental United States (assuming that such individuals had money).

The adverse experiences chronicled by the petitioner spanned a three-year period from 1999 to the end of 2001. After that, he hid in his house but still could not escape the gangs' unrequited attention.

The dénouement occurred in 2003. On one occasion during that year, gang members came to the petitioner's home after a drinking spree and waited for him to emerge. They left when others told them (falsely) that the petitioner was not there.

A month later, the petitioner fled. He entered the United States, without inspection, at or near Columbus, New Mexico, around November 7, 2003. He was immediately detained, and the Department of Homeland Security initiated removal proceedings. In due course, the petitioner conceded removability and cross-applied for asylum, withholding of removal, and protection under the CAT.

Following an evidentiary hearing, the IJ concluded that the petitioner's testimony was credible but that he had failed to establish that he was targeted by the gangs because of his religious or political beliefs. In the IJ's view, the gangs appeared to be harassing the petitioner because of his perceived affluence. Thus, the petitioner had not carried the burden of demonstrating a nexus between the claimed persecution (the gangs'

offensive conduct) and a characteristic protected under the Immigration and Nationality Act.

The IJ also found that although gang members had addressed some threats to the petitioner concerning his refusal to join their ranks, these threats were neither "of an escalating nature" nor "severe." As to the fact that the petitioner had been physically assaulted on one occasion, the IJ noted that the assault transpired "in connection with being robbed." In sum, the series of incidents that had occurred did not add up to persecution.

Based on these and other findings, the IJ denied all three forms of requested relief. On appeal, the BIA affirmed the IJ's decision, stating that the petitioner had "failed to establish that the gangs in El Salvador, who attempted to rob him and extort money from him, were motivated by his political opinion, imputed political opinion, religion, or another protected ground, rather than by financial gain." In addition, the BIA observed that the petitioner had not established that the gangs were working with the government or that the government lacked power over them. Consequently, the petitioner's generalized fear that he would fall prey to gang violence should he be returned to El Salvador did not render him eligible either for protection under the CAT or for any other relief.

Once the BIA ruled that the petitioner had failed to satisfy the requirements for asylum, withholding of removal, or

protection under the CAT, the petitioner filed this petition for judicial review. The petition is timely, see 8 U.S.C. § 1252(b)(1), and we have jurisdiction to entertain it under 8 U.S.C. § 1252, as amended.

We begin our substantive analysis by examining the petitioner's asylum claim. To qualify for asylum, an alien initially must establish his status as a refugee, that is, a person who is unable or unwilling to return to his homeland "because of persecution . . . on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A); see INS v. Cardoza-Fonseca, 480 U.S. 421, 428 (1987); Jiang v. Gonzales, 474 F.3d 25, 30 (1st Cir. 2007). "Persecution is a protean term, not defined by statute." Lopez de Hincapie v. Gonzales, 494 F.3d 213, 217 (1st Cir. 2007). "One element in the decisional calculus involves the degree of the harm inflicted or threatened." Id. To sink to the level of persecution, "the sum of an alien's experiences must add up to more than ordinary harassment, mistreatment, or suffering." Id.; see Bocova v. Gonzales, 412 F.3d 257, 263 (1st Cir. 2005).

Given a sufficient showing of harm, an alien can base an asylum claim on a showing that he has been persecuted in the past or, alternatively, that he harbors a well-founded fear of future persecution. See Makhoul v. Ashcroft, 387 F.3d 75, 79 (1st Cir. 2004). In either event, however, he must show a nexus between the

harm (whether past or threatened) and one of the five statutorily protected grounds. See, e.g., Raza v. Gonzales, 484 F.3d 125, 128-29 (1st Cir. 2007); Makhoul, 387 F.3d at 79. To accomplish this feat, the petitioner must "provide sufficient evidence to forge an actual connection between the harm and some statutorily protected ground." Lopez de Hincapie, 494 F.3d at 218; see Da Silva v. Ashcroft 394 F.3d 1, 6 (1st Cir. 2005); see also 8 C.F.R. § 208.13(b)(1).

The question of whether persecution is on account of one of the five statutorily protected grounds is factbound. Hence, we review the BIA's answer to that question through the prism of the substantial evidence rule. See Lopez de Hincapie, 494 F.3d at 218. "This is a highly deferential standard, under which we must uphold the BIA's determination as long as that determination is 'supported by reasonable, substantial, and probative evidence on the record considered as a whole.'" Id. (quoting INS v. Elias-Zacarias, 502 U.S. 478, 481 (1992)). "That the record supports a conclusion contrary to that reached by the BIA is not enough to warrant upsetting the BIA's view of the matter; for that to occur, the record must compel the contrary conclusion." Id. (citing Elias-Zacarias, 502 U.S. at 481 n.1)(emphasis in original); see 8 U.S.C. § 1252(b)(4)(B) (mandating that, in this context, "administrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary").

Here, the petitioner tries to connect the gangs' unruly conduct to his religious persuasion (membership in an apostolic Christian church) or, alternatively, to his political opinion (imputed from his refusal to join a gang). But he weaves these connections out of the gossamer strands of speculation and surmise. In support, he offers only his personal (subjective) conviction and weak circumstantial evidence that either or both of these reasons spurred the gangs' actions. Hard evidence of the required nexus is conspicuously absent.

We add, moreover, that what evidence exists in the record invites the inference that the gangs targeted the petitioner because of greed, not religion or politics. That inference is reinforced by its plausibility: gangs typically are composed of common criminals who are apt to resort to force to accomplish their nefarious ends. See Romilus v. Ashcroft, 385 F.3d 1, 6-7 (1st Cir. 2004). Even reading the record with a charitable eye, the gangs' actions (as the petitioner describes them) could just as easily have been prompted by a desire to extort money as by any motive connected to a statutorily protected ground. That state of affairs leaves us no principled choice but to uphold the BIA's determination.[1] After all, where the record admits of plausible

---

[1]Because this ground suffices to sustain the denial of the claim for asylum, we need not consider the BIA's alternative holding that the conduct complained of, though harassing, did not sink to the level of persecution.

but conflicting inferences, the agency's choice between those inferences is necessarily supported by substantial evidence. See Bocova, 412 F.3d at 264; Aguilar-Solis v. INS, 168 F.3d 565, 571 (1st Cir. 1999).

Let us be perfectly clear. We are not without empathy for the petitioner's plight. Gang violence apparently is endemic in El Salvador, and the events described by the petitioner paint an unattractive picture. But the substantial evidence rule demands that we uphold the agency's determination unless the evidence "points unerringly in the opposite direction." Laurent v. Ashcroft, 359 F.3d 59, 64 (1st Cir. 2004). The evidence here does not approach that level of certitude in connection with the putative relationship between the gangs' menacing actions and the petitioner's religious and/or political beliefs.

We need not linger long over the petitioner's claim for withholding of removal. Although the tests for asylum and withholding of removal differ somewhat, the "on account of" requirement is embedded identically in each formulation. See INS v. Stevic, 467 U.S. 420, 429-30 (1984). Accordingly, the petitioner's failure to establish a nexus between the conduct complained of and some statutorily protected ground serves equally to defeat his withholding of removal claim. See, e.g., Lopez de Hincapie, 494 F.3d at 220.

This leaves the petitioner's CAT claim. Unlike his other two claims, this claim does not embody an "on account of" element. An alien can prevail on a CAT claim simply by showing that, more likely than not, he will be tortured if repatriated. See 8 C.F.R. § 208.16(c)(2); see also Ang v. Gonzales, 430 F.3d 50, 58 (1st Cir. 2005). He need not establish a nexus between the predicted torture and some statutorily protected ground.

We review the BIA's disposition of a CAT claim by application of the substantial evidence rule. See Settenda v. Ashcroft, 377 F.3d 89, 93 (1st Cir. 2004). Thus, we must honor the BIA's resolution of the petitioner's CAT claim unless the evidence compels us to reach a different conclusion. Id. The petitioner cannot surmount this hurdle.

In order to qualify for protection under the CAT, an alien must demonstrate that it is more likely than not that he will be tortured if returned to his country of origin. 8 C.F.R. § 1208.16(c)(2). For purposes of the CAT, "[t]orture is defined as any act by which severe pain or suffering, whether physical or mental, is intentionally inflicted on a person . . . by or at the . . . acquiescence of a public official or other person acting in an official capacity." Id. § 208.18(a)(1). Passing the question of whether the actions of which the petitioner complains can be

equated with torture,[2] there is nothing in the record that compels the conclusion that the petitioner, if remitted to his homeland, is likely to be tortured either by the government or through governmental acquiescence. We explain briefly.

In this instance, the petitioner avers that he would be harmed (i.e., tortured) by gangs upon his return to El Salvador. While he acknowledges that the gangs are not officially sanctioned, he asserts that the government is unable to control them.

Admittedly, the record is tenebrous on this point. Nevertheless, the BIA concluded, inter alia, that the petitioner had failed to establish that the El Salvadoran government would acquiesce in the gangs' infliction of harm upon private citizens. The very murkiness of the record means that we are not compelled to decide otherwise, and it therefore makes the BIA's conclusion invulnerable.

At any rate, there is evidence that gang violence constitutes a serious problem in El Salvador, but that the police attempt with some success to prevent that activity.[3] While that

---

[2]Torture is "an extreme form of cruel and inhuman treatment and does not include lesser forms of cruel, inhuman or degrading treatment . . . ." 8 C.F.R. § 208.18(a)(2). The government asseverates that no conduct extreme enough to constitute "torture" was in prospect here. Given our ratio decidendi, we need not address this argument.

[3]Indeed, this evidence is buttressed by the petitioner's affidavit, in which he states that it was the intercession of a guard that stopped gang members from harassing him in the December 2001 incident of which he complains.

sort of stand-off may be of scant solace to the citizenry, it plainly supports an inference that the government neither condones gang violence nor is helpless in the face of it.[4]

The short of it is that the petitioner has not adduced any compelling evidence that the putative torturers are state actors or, alternatively, that the authorities would be in some way complicit (or at least acquiescent) in the infliction of harm. This is dispositive because the infliction of harm does not constitute torture within the meaning of the CAT unless that harm is inflicted by, at the direction of, or with the acquiescence of government officials.  See 8 C.F.R. § 208.18(a)(1); Sharari v. Gonzales, 407 F.3d 467, 475-76 (1st Cir. 2005).  Given this gap in the proof, the agency's denial of the petitioner's claim for protection under the CAT must stand.

We need go no further.  For the reasons elucidated above, we uphold the BIA's rejection of the petitioner's claims.

**The petition for review is denied**.

---

[4]To be sure, the petitioner did submit some "country conditions" evidence suggesting that the El Salvadoran government has not been fully able to bring gang violence to heel.  But the petitioner has fallen short of providing compelling evidence to support the conclusion that gang violence is either out of control or conducted with the government's tacit consent.

-11-