**Not for Publication in West's Federal Reporter**

# United States Court of Appeals
## For the First Circuit

No. 16-2029

MUSTAFA AHMAD KURDI,

Petitioner,

v.

JEFFERSON B. SESSIONS, III,
Attorney General of the United States,[*]

Respondent.

PETITION FOR REVIEW OF AN ORDER OF
THE BOARD OF IMMIGRATION APPEALS

Before

Howard, Chief Judge,
Thompson and Barron, Circuit Judges.

Saher J. Macarius, Audrey Botros, and Law Offices of Saher J. Macarius LLC on brief for petitioner.
Victoria M. Braga, Trial Attorney, Office of Immigration Litigation, U.S. Department of Justice, Joyce R. Branda, Acting Assistant Attorney General, Civil Division, and Cindy S. Ferrier, Assistant Director, on brief for respondent.

April 14, 2017

---

[*] Pursuant to Fed. R. App. P. 43(c)(2), Attorney General Jefferson B. Sessions, III has been substituted for former Attorney General Loretta E. Lynch as respondent.

**HOWARD**, **Chief Judge**.  Petitioner Mustafa Ahmad Kurdi, a native and citizen of Lebanon, asks us to review a Board of Immigration Appeals ("BIA") order denying his claims for asylum, withholding of removal, and protection under the United Nations Convention Against Torture ("CAT").  After careful consideration of the briefs and the administrative record, we deny the petition.

## I.

Kurdi entered the United States on a visitor's visa in 2006 and remained longer than permitted.  That same year, he married a U.S. citizen.  Kurdi's wife filed a visa petition on his behalf, but the Department of Homeland Security ("DHS") denied the petition and filed a Notice to Appear charging Kurdi as removable pursuant to Immigration and Nationality Act § 237(a)(1)(B).

An immigration judge ("IJ") continued Kurdi's proceedings to allow his spouse to file another visa petition on his behalf, which she did in December 2009.  Nearly two years later, DHS denied this second petition, finding that the couple had failed to meet their burden of proving the bona fides of their marriage.  Only after this second denial -- some six years after Kurdi entered the United States -- did Kurdi seek asylum, withholding of removal, and protection under the CAT.

In his asylum application and in testimony before the IJ, Kurdi claimed that between 1998 and 1999 -- that is, while he

- 2 -

was completing a one-year period of compulsory service in the Lebanese military -- a member of a group considered by the United States to be a terrorist organization ("the organization") approached Kurdi and asked him to act as an informant. Kurdi refused because he worried that becoming an informant would put him and his family at risk; however, he also worried that he could be killed for refusing. Therefore, after rejecting the request, Kurdi successfully sought transfer to another military post. He completed his military service without being contacted, let alone threatened or harmed, by any members of the organization.

Kurdi applied for a visa to study in Germany after his military service. He studied there between 2001 and 2006 but never applied for asylum or refugee status in Germany because it was "not on [his] mind. [He] wasn't thinking of it."

Kurdi returned to Lebanon on three occasions while living in Germany. He claimed that he returned, in spite of his fears, because his father was ill, and his parents asked him to visit. During the first of these three visits, local police detained Kurdi for one night; the detention, he speculated, was spurred by interest in the car he was driving. Though Kurdi described the police as "rude," they never threatened or otherwise harmed him. Nor did any members of the organization threaten or harm him. No incidents occurred during Kurdi's two subsequent visits to Lebanon.

At his immigration hearing, Kurdi conceded that he had not received any threats from the organization while living in the United States. Further, he admitted that his mother and several of his siblings continued to live in Lebanon unharmed. He claimed, however, that he remained fearful that the organization would seek to harm him if he returned to Lebanon.

The IJ issued an oral decision denying Kurdi's claims for relief on the merits and ordered him removed to Lebanon. The IJ found that, although Kurdi was credible, he failed to meet his burden of showing either past persecution or a well-founded fear of future persecution.[1] The BIA affirmed the IJ's decision.

This timely petition for review followed.

## II.

Kurdi challenges the BIA's denial of his claims for asylum, withholding of removal, and protection under the CAT. Where, as here, the BIA adopts the IJ's decision and reasoning, we review both decisions under the deferential substantial evidence standard. Conde Cuatzo v. Lynch, 796 F.3d 153, 156 (1st Cir. 2015). Under this rubric, we will not reverse "unless 'the record

---

[1] Kurdi argues at some length on appeal that he was credible. Yet, this is so much wasted breath, as the IJ accepted Kurdi's testimony as credible, and the BIA did not disturb that finding. Our analysis proceeds under the assumption that Kurdi testified credibly.

would compel a reasonable adjudicator to reach a contrary determination.'" Id. (quoting Lin v. Holder, 561 F.3d 68, 72 (1st Cir. 2009)). Kurdi cannot clear this high hurdle.

**A. Asylum**

In order to qualify for asylum, an applicant must establish either past persecution, or a well-founded fear of future persecution if repatriated, on account of one of five enumerated grounds: race, religion, nationality, membership in a particular social group, or political opinion. See 8 U.S.C. § 1101(a)(42)(A).

Ample evidence supports the IJ's conclusion that Kurdi's experiences in Lebanon did not rise to the level of persecution. The attempted recruitment alone is inadequate. Cf. I.N.S. v. Elías-Zacarías, 502 U.S. 478, 482 (1992) (attempted recruitment does not constitute persecution on account of an individual's political opinion). Here, Kurdi claims that he suffered persecution because "he was forced to change his lifestyle" out of "fear and paranoia on a daily basis of being harmed" by the organization because he declined to help it. Yet, the record plainly shows that no one in Lebanon threatened or harmed Kurdi at any time. Even accepting that Kurdi felt fearful, his experience simply does not fit within our understanding of "'persecution' [a]s an extreme concept," Fatin v. I.N.S., 12 F.3d 1233, 1243 (3d Cir. 1993), that goes beyond mere "unpleasantness, harassment, and

- 5 -

even basic suffering," Nelson v. I.N.S., 232 F.3d 258, 263 (1st Cir. 2000).

Kurdi also points to his overnight detention by Lebanese police. But Kurdi himself linked this detention to interest in his car rather than to a protected ground. Even if we assume arguendo that the detention was a harm rising to the level of persecution, because Kurdi fails to "provide sufficient evidence to forge an actual connection between the harm and some statutorily protected ground," he cannot show eligibility for asylum on this basis. Lopez de Hincapie v. Gonzales, 494 F.3d 213, 218 (1st Cir. 2007).

We find no reason to disturb the IJ and BIA's conclusion that Kurdi failed to show past persecution, as "[w]e cannot say on these facts that the 'record compels a contrary conclusion.'" Lumataw v. Holder, 582 F.3d 78, 91 (1st Cir. 2009) (quoting Elías-Zacarías, 502 U.S. at 481 n.1). Because Kurdi did not show that he suffered past persecution, he was not entitled to a presumption that he had a well-founded fear of future persecution. See 8 C.F.R. § 1208.13(b)(1).

Kurdi argues that he nevertheless qualifies for asylum because he provided evidence that he would be persecuted if repatriated to Lebanon.[2] Absent a showing of past persecution,

_____

[2] Kurdi also asserts that "the IJ failed to take into consideration the country reports in considering [his] fear of

- 6 -

Kurdi has a higher hurdle here. Under the circumstances, he must harbor a genuine fear of future persecution and must establish an objectively reasonable basis for that fear. See Nikijuluw v. Gonzales, 427 F.3d 115, 121-122 (1st Cir. 2005). Kurdi's credible testimony suffices to satisfy the subjective component. See id. at 122. Therefore, as the IJ did, we focus our inquiry on the objective component. "An objectively reasonable fear . . . exists if a reasonable person in the petitioner's circumstances would fear persecution based on a statutorily protected ground." Id. On this record -- including the U.S. Department of State Country Report -- there was substantial evidence for the IJ to conclude that, although Lebanon is characterized by "general conditions of violence and political instability," a reasonable person in Kurdi's position would not fear persecution on account of a protected ground.

We do not minimize reports of the organization's acts of violence, but general criminal activity cannot ground a well-founded fear of future persecution. See Vasili v. Holder, 732 F.3d 83, 91 (1st Cir. 2013) (finding no well-founded fear of future persecution despite Country Report that indicated presence of criminal violence "as well as some corruption and incompetence within the police force"). Moreover, Kurdi did not (conclusory

_____

future persecution." On the contrary, the record shows that the IJ cited and discussed current U.S. State Department reports.

claims aside) show he would be targeted personally: there was no evidence that members of the organization were looking for him, and he lived in and visited Lebanon without threat or harm after refusing to aid the organization. Cf. Zhang v. Holder, 330 F. App'x 201, 203 (1st Cir. 2009) (citing similar reasons to deny petition for review). In sum, the record considered as a whole does not compel the conclusion that Kurdi has a well-founded fear of future persecution.

Accordingly, we conclude that substantial evidence supports the agency's asylum determination.

## B. Withholding of Removal

Because Kurdi failed to carry the burden of persuasion for his asylum claim, his related claim for withholding of removal necessarily fails. See Villa-Londono v. Holder, 600 F.3d 21, 24 n.1 (1st Cir. 2010).

## C. CAT

This brings us to Kurdi's final claim. The BIA concluded that Kurdi had not established eligibility for protection under the CAT, explaining that he failed to "demonstrate that [he] would more likely than not be tortured in Lebanon by or with the acquiescence of a public official or other person acting in an official capacity." The infliction of harm does not constitute

torture within the meaning of the CAT unless the harm "is inflicted by, at the direction of, or with the acquiescence of government officials."  Lopez de Hincapie, 494 F.3d at 221.  Kurdi argues here that the Lebanese government would be unable to control the organization if he returns.  Though the record is murky on this point, "[t]he very murkiness of the record means that we are not compelled to decide otherwise, and it therefore makes the BIA's conclusion invulnerable."  Flores-Coreas v. Mukasey, 261 F. App'x 287, 291 (1st Cir. 2008).


### III.

For the forgoing reasons, we **deny** Kurdi's petition.