# United States Court of Appeals
## For the First Circuit

No. 06-2259

MARIA ARACELLY LOPEZ DE HINCAPIE,

Petitioner,

v.

ALBERTO R. GONZALES,
ATTORNEY GENERAL,

Respondent.

PETITION FOR REVIEW OF AN ORDER
OF THE BOARD OF IMMIGRATION APPEALS

Before

Lipez and Newman,* Circuit Judges,
and Selya, Senior Circuit Judge.

L. Manuel Macias and Ilana Greenstein on brief for petitioner.
Peter D. Keisler, Assistant Attorney General, Civil Division,
Terri J. Scadron, Assistant Director, Office of Immigration
Litigation, and Siu P. Wong, Trial Attorney, Office of Immigration
Litigation, on brief for respondent.

July 17, 2007

_____
*Hon. Pauline Newman, of the Federal Circuit, sitting by
designation.

**SELYA**, **Senior Circuit Judge**.    The petitioner is a Colombian national.  She seeks judicial review of a final order of removal issued by the Board of Immigration Appeals (BIA), which denied her omnibus application for asylum, withholding of removal, and relief under the Convention Against Torture (CAT).    The petitioner labors to convince us that the BIA erred in denying her relief from deportation.  We are not persuaded.

The petitioner, Maria Aracelly Lopez de Hincapie, then fifty-four years of age and a resident of Chinchina Caldas, Colombia, entered the United States as a tourist on February 15, 2000.  Although her B-2 tourist visa expired six months later, she remained in the country.  During the summer of 2000, she was arrested in New York after trying to obtain a fraudulent green card.  She pleaded guilty to bribery of a public official. See 18 U.S.C. § 201(b)(1)(A).  After her visa expired, federal authorities charged her with overstaying her visa and seeking to procure immigration documents by fraud in violation of the Immigration and Nationality Act (INA).    See 8 U.S.C. § 1182(a)(6)(C)(i), (a)(7)(A)(i)(I).

In due course, removal proceedings were instituted.  The petitioner conceded removability but cross-applied for asylum, withholding of removal, or protection under the CAT. See id. §§ 1158(b), 1231(b)(3); 8 C.F.R. § 208.16(c).  An Immigration Judge (IJ) pretermitted her asylum application after finding that

the aforementioned bribery conviction constituted an aggravated felony.  See 8 U.S.C. § 1158(b)(2)(B)(i).

The IJ conducted a hearing on the petitioner's remaining requests for relief.  The petitioner averred that she had suffered persecution in her homeland on account of imputed political opinion and membership in a particular social group.

The petitioner testified on her own behalf.  Her tale began in 1991.  She recounted that, on February 26 of that year, her son and her half-brother were shot and killed in what appeared to be a botched robbery at a Medellín nightclub.  She thought that a paramilitary or guerilla group may have been responsible.  After a police investigation proved fruitless, two more of the petitioner's half-brothers, Ivan and Carlos, inaugurated a vigorous campaign to bring their sibling's slayers to justice.  They repeatedly visited the police station, questioned the results of the investigation, and pressured the police to track down the perpetrators.

On October 28, 1993, Ivan was shot to death by two men on motorcycles as he stood on the sidewalk outside a local fire station.  Carlos continued pressing for action in the nightclub shooting despite warnings from the constabulary that he should back down in order to "prevent being killed also."

The petitioner further testified that, in March of 1996, the mother of Ivan and Carlos (Celina Betancour) was struck and

killed by two motorcyclists as she stood at a gasoline pump. Fearing for his life, Carlos moved to the neighboring town of Armenia. He periodically returned to Chinchina to help the petitioner care for their ailing father. Each time he returned, Carlos received threats on his life. He nonetheless remained extremely vocal about his intention to track down his brother's killers.

The petitioner says that she too received a series of threats. Some were by means of vague and anonymous telephone calls to her mother's house. Others were by means of messages contained in flyers and booklets left at the clothing store that she owned. For the most part, those messages threatened that she would be killed if she did not pay money (although the messages never specified how much money or to whom it should be paid). Some of the messages, however, did not mention money but warned cryptically that the petitioner "could be . . . next" or that "the cemetery [would] accept a lot of families."

The petitioner testified that she did not know who was responsible for the threats. She speculated, however, that they were generated by the same guerilla or paramilitary group that had carried out the nightclub shooting.

On September 19, 1999, Carlos was shot by two men on motorcycles as he walked outside of his father's house. The

petitioner suspected that the same group had struck again. Fearing that she would be next, she repaired to the United States.

The IJ credited much of this tale but nonetheless denied the petitioner's entreaties for withholding of removal and relief under the CAT. In his bench decision, he found that the petitioner had failed to establish a nexus between her fear of physical harm and any statutorily protected ground. The IJ noted the petitioner's inability to identify the persons making the threats and concluded that the threats were likely motivated by extortion or some other species of garden-variety criminality. As the flip side of this coin, the IJ found no reason to believe that the persons responsible for the threats were connected to any particular guerilla group or faction. Finally, the IJ rejected the petitioner's CAT claim, discerning no evidence of a likelihood that the petitioner would be tortured if returned to Colombia.

The petitioner appealed. The BIA disagreed with the IJ's conclusion that bribery of a public official constituted an aggravated felony as that term is used in the INA. See 8 U.S.C. § 1101(a)(43). Thus, the BIA considered and rejected the petitioner's asylum claim on the merits, concluding that the petitioner had failed to furnish evidence sufficient to establish a nexus between the reported threats and a statutorily protected ground. With respect to the petitioner's other claims — for withholding of removal and sanctuary pursuant to the CAT — the BIA

affirmed the IJ's rulings.  This timely petition for judicial review followed.

We turn first to the petitioner's asylum claim.  To qualify for asylum, an alien first must establish her status as a refugee, that is, a person who is unable or unwilling to return to her homeland "because of persecution . . . on account of race, religion, nationality, membership in a particular social group, or political opinion."  8 U.S.C. § 1101(a)(42)(A); see INS v. Cardoza-Fonseca, 480 U.S. 421, 428 (1987); Jiang v. Gonzales, 474 F.3d 25, 30 (1st Cir. 2007).  The alien can satisfy this obligation by showing that she has been persecuted in the past on account of one of the five statutorily protected grounds or, alternatively, that a well-founded fear of future persecution on such a ground exists. See Makhoul v. Ashcroft, 387 F.3d 75, 79 (1st Cir. 2004).

As we embark upon our analysis, we begin at the beginning.  Persecution is a protean term, not defined by statute. One element in the decisional calculus involves the degree of the harm inflicted or threatened.  To rise to the level of persecution, the sum of an alien's experiences must add up to more than ordinary harassment, mistreatment, or suffering.  See Attia v. Gonzales, 477 F.3d 21, 23 (1st Cir. 2007); Bocova v. Gonzales, 412 F.3d 257, 263 (1st Cir. 2005).  Because threats of murder would fit neatly under this carapace, see, e.g., Un v. Gonzales, 415 F.3d 205, 210 (1st Cir. 2005); Andriasian v. INS, 180 F.3d 1033, 1042 (9th Cir. 1999);

-6-

Aquilar-Solis v. INS, 168 F.3d 565, 570 (1st Cir. 1999), we assume, favorably to the petitioner, that she has met this prong of the test for persecution.

Another element of an asylum claim based on persecution involves the nexus requirement, that is, whether the harm, if otherwise sufficient, has occurred (or is anticipated to occur) "on account of" one of the five statutorily protected grounds. See, e.g., Raza v. Gonzales, 484 F.3d 125, 128-29 (1st Cir. 2007); Makhoul, 387 F.3d at 79. This "on account of" requirement — the latter facet of our first preliminary point — lies at the epicenter of our inquiry; the BIA's denial of the petitioner's asylum claim was premised on her failure to satisfy that requirement.

A further point that demands clarification concerns the showing that is required to satisfy the "on account of" element. The petitioner interprets the INA to require that an alien demonstrate only a reasonable possibility of a nexus between the harm and a statutorily protected ground. This is an incorrect view of the law. In INS v. Elias-Zacarias, 502 U.S. 478 (1992), the Supreme Court stated that showing a linkage to one of the five statutorily protected grounds is "critical" to a successful asylum claim. Id. at 483. This is strong language, not consistent with the notion of proof of a mere possibility. Thus, even though an asylum applicant need only demonstrate a reasonable possibility of future persecution, we think that she must provide sufficient

evidence to forge an actual connection between the harm and some statutorily protected ground. See DaSilva v. Ashcroft 394 F.3d 1, 6 (1st Cir. 2005); see also 8 C.F.R. 208.13(b)(1).

Before we turn from the general to the specific, we think it wise to emphasize that the question of whether persecution is on account of one of the five statutorily protected grounds is fact-specific. Consequently, we review the BIA's answer to that question through the prism of the substantial evidence rule. See Berrio-Barrera v. Gonzales, 460 F.3d 163, 167 (1st Cir. 2006); DaSilva, 394 F.3d at 4. This is a highly deferential standard, under which we must uphold the BIA's determination as long as that determination is "supported by reasonable, substantial, and probative evidence on the record considered as a whole." Elias-Zacarias, 502 U.S. at 481. This standard "is not petitioner-friendly." Bocova, 412 F.3d at 262. That the record supports a conclusion contrary to that reached by the BIA is not enough to warrant upsetting the BIA's view of the matter; for that to occur, the record must compel the contrary conclusion. See Elias-Zacarias, 502 U.S. at 481 n.1; Aguilar-Solis, 168 F.3d 569; see also 8 U.S.C. § 1252(b)(4)(B) (mandating that "the administrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude the contrary").

The petitioner tries to connect her asylum claim to her political opinion or, alternatively, her membership in a social

group.  She forges these connections as follows.  As to political opinion, she claims that her brothers and stepmother were killed as a result of their efforts to probe the nightclub shooting. Building on that foundation, she envisions those efforts as manifesting a political opinion — speaking out against corruption and in favor of the rule of law — disfavored by the faction responsible for the shooting.  This guerilla or paramilitary group, she alleges, imputed to her the same political opinion and threatened to kill her on account of it.

Her "social group" argument is a recasting of the same theory.  The social group that she has in mind is the Lopez-Betancour family (of which she is a member).  She contends that she was targeted "on account of" her family membership because of the family's insistence that the rule of law prevail.

For present purposes, we need not distinguish between the petitioner's two theories.  Whether hitched to political opinion or to social group membership, the nexus requirement is the same.  The question, then, is the supportability of the BIA's determination that the petitioner failed to prove that the harm alleged (here, the threats) was "on account of" a statutorily protected ground.[1]

---

[1]Because we answer this query in the negative, see text infra, we need not reach any questions that might be lurking in the penumbra of the case concerning whether the "rule of law" advocacy touted by the petitioner suffices to bring her within the political opinion and/or social group taxonomy.

The petitioner testified that her clothing store, where most of the threats occurred, was very successful and that the threats ceased when she was no longer actively engaged in the business. She testified, moreover, that she thought the purpose of the threats was "to request money from [her]" because she "was working well." These facts invite the inference that whoever was threatening the petitioner targeted her because of greed, not because of her political opinion or membership in a particular social group. At the very least, the threats could just as easily have been prompted by a desire to extort money as by any motive connected to a statutorily protected ground. Cf. Aguilar-Solis, 168 F.3d at 572 (finding plausible the IJ's suggestion that, given petitioner's substantial land holdings, threats could have represented attempts by guerillas to garner financial support for their movement).

The evidence anent the origins of the threats is not helpful to the petitioner's endeavor to resist this inference. She could not identify the source of the threats, either precisely or categorically; and the record, fairly read, does not compel a finding that the threats were in any way associated with either political opinion or social group membership. While the petitioner was not required to identify her antagonists with absolute certainty, she was required, in the absence of a positive identification, to furnish some credible evidence of the motivation

-10-

underlying the threats. See Elias-Zacarias, 502 U.S. at 483; Romilus v. Ashcroft, 385 F.3d 1, 7 (1st Cir. 2004). After all, guerillas and common criminals are equally apt to resort to violent means to accomplish their goals, and it is the alien's burden to give the adjudicator some basis for differentiation in a given case. See Romilus, 385 F.3d at 7. The petitioner here failed to carry that burden.

The content of the threats also does little to bolster the petitioner's cause. The threats did not demand that the petitioner stop associating with Carlos, nor did they forecast further violence if her family continued pressing for a more complete investigation of the nightclub shooting. Without any such explicit linkage, it was reasonable for the BIA to conclude that the threats were most likely the handiwork of common criminals. See Boci v. Gonzales, 473 F.3d 762, 767 (7th Cir. 2007); Romilus, 385 F.3d at 7.

To be sure, the threats themselves were not typically extortionate. They lacked specific information about when, to whom, and how much money should be paid. Moreover, some of them made veiled references to death and family. All of this, however, adds up to no more than that the BIA might have drawn an inference that the petitioner was singled out due to her imputed political opinion or family ties. But the BIA chose not to draw that inference and chose instead to draw a contrary but plausible

inference: that the threats were sparked by an intention to extort. Where the record supports plausible but conflicting inferences in an immigration case, the IJ's choice between those inferences is, a fortiori, supported by substantial evidence. See Bocova, 412 F.3d at 264; Aguilar-Solis, 168 F.3d at 571; see also Romilus, 385 F.3d at 7.

We add, moreover, that the inference that the BIA elected to draw is strengthened by the fact that the petitioner's children continue to reside in Colombia without apparent incident. If the petitioner had been targeted on account of family membership, there is no logical explanation why her children would not be equally at risk. Their continued existence in Colombia suggests that the threats were unconnected to her family ties.[2] See Aguilar-Solis, 168 F.3d at 573.

We are not without sympathy for the petitioner's plight. Colombia is a nation wracked with violence, and the murderous sequence described by the petitioner makes the communicated threats more ominous. But we must uphold the BIA's determination unless the evidence "points unerringly in the opposite direction." Laurent v. Ashcroft, 359 F.3d 59, 64 (1st Cir. 2004). The evidence

---

[2]It is worth noting that the petitioner's children live in other regions of Colombia. This and other evidence suggests that the threats were, at most, a local phenomenon. If the petitioner were able to protect herself from the threats by the simple expedient of moving elsewhere in her homeland, that fact would undermine her claim for asylum. See Alibeaj v. Gonzales, 469 F.3d 188, 190-91 (1st Cir. 2006); DaSilva, 394 F.3d at 8.

here, taken as a whole, does not approach that benchmark. It follows inexorably that we have no principled choice but to uphold the BIA's determination that no sufficient nexus existed between the threats and some protected ground. This means, of course, that we must allow the rejection of the petitioner's asylum claim to stand.

We need not linger long over the petitioner's claim for withholding of removal. Although the tests for asylum and withholding of removal differ in several important respects, see, e.g., Kobuqabe v. Gonzales, 440 F.3d 900, 901-02 (7th Cir. 2006), the "on account of" requirement is common to both, see INS v. Stevic, 467 U.S. 420, 429-30 (1984). As a result, the petitioner's failure to successfully establish a nexus between the threats and a statutorily protected ground dooms her withholding of removal claim. See, e.g., Sanchez v. U.S. Att'y. Gen., 392 F.3d 434, 438 (11th Cir. 2004).

The disposition of the asylum and withholding of removal claims does not end our journey. Unlike her other two claims, the petitioner's CAT claim does not embody an "on account of" requirement; that is, an alien who establishes a likelihood of torture need not prove the existence of a nexus between the predicted torture and some statutorily protected ground. See Romilus, 385 F.3d at 8. Put another way, an alien can show eligibility for CAT relief simply by establishing that, more likely

than not, she will be tortured if forced to return to her homeland. See 8 C.F.R. § 208.16(c)(2); see also Ang v. Gonzales, 430 F.3d 50, 58 (1st Cir. 2005). For this purpose, "[t]orture is defined as any act by which severe pain or suffering, whether physical or mental, is intentionally inflicted on a person . . . by or at the acquiescence of a public official or other person acting in an official capacity." 8 C.F.R. § 208.18(a)(1).

We review the BIA's disposition of a CAT claim by application of the substantial evidence rule. See Settenda v. Ashcroft, 377 F.3d 89, 93 (1st Cir. 2004). Accordingly, we must honor the BIA's resolution of the instant claim unless the evidence compels us to reach an inconsistent conclusion. See Aquilar-Solis, 168 F.3d at 569. The petitioner cannot surmount this hurdle.

The petitioner's CAT claim is based entirely on her theory that because members of a guerilla or paramilitary faction have killed her relatives, she too will likely be killed should she return to Colombia. This theory is full of holes. For one thing, it is undermined by the absence of a demonstrated connection between the threats and the murders. For another thing, it is undercut by the fact that her children still live there. These and other facts provide ample reason to doubt that torture is a likely outcome.

If more were needed — and we doubt that it is — the petitioner has not adduced any evidence that the prospective

torturers were state actors or alternatively, that the authorities would be in some way complicit (or, at least, acquiescent) in the torture.[3]  This is important because the infliction of harm does not constitute torture within the meaning of the CAT unless that harm is inflicted by, at the direction of, or with the acquiescence of government officials.  See 8 C.F.R. § 208.18(a)(1); Sharari v. Gonzales, 407 F.3d 467, 475-76 (1st Cir. 2005).

Finally, the record seems very clear that — as the BIA found — whatever threats the petitioner faced seem to have been localized — that is, limited to Chinchina.  For aught that appears, the petitioner would be able to insulate herself from that source of danger by relocating within Colombia.  That, in and of itself, is reason enough to uphold the BIA's rejection of her CAT claim. See, e.g., Hasan v. Ashcroft, 380 F.3d 1114, 1123 (9th Cir. 2004); see generally Orelien v. Gonzales, 467 F.3d 67, 71 (1st Cir. 2006) (applying similar reasoning in upholding rejection of claim for asylum).

This is a difficult case, made more so by the obvious fact that the petitioner's lot is not a happy one.  But we do what we must, for "it is the duty of all courts of justice to take care,

---

[3]The petitioner did submit extensive country condition evidence suggesting that the Colombian government turns a blind eye to guerilla and paramilitary violence.  But the petitioner has provided no evidence, let alone compelling evidence, that her tormentors were members of one of these groups (as opposed to common criminals).

-15-

for the general good of the community, that hard cases do not make bad law."  United States v. Clark, 96 U.S. 37, 49 (1877) (Harlan, J., dissenting) (quoting Lord Campbell in East India Co. v. Paul, 7 Moo. P. C. C. 111).

We need go no further.  For the reasons elucidated above, we uphold the BIA's rejection of the petitioner's claims.

**The petition for review is denied**.