# United States Court of Appeals
## For the First Circuit

No. 08-1993

FATAH AMOURI,

Petitioner,

v.

ERIC H. HOLDER, JR.,[*] ATTORNEY GENERAL,

Respondent.

PETITION FOR REVIEW OF AN ORDER OF THE BOARD

OF IMMIGRATION APPEALS

Before

Boudin, Selya and Lipez,
Circuit Judges.

Michael A. Paris and Cutler & Associates on brief for petitioner.
Michael F. Hertz, Assistant Attorney General, Civil Division, Hillel Smith and Anthony Wray Norwood, Trial Attorneys, Office of Immigration Litigation, on brief for respondent.

July 14, 2009

---

[*]Pursuant to Fed. R. App. P. 43(c)(2), Attorney General Eric H. Holder, Jr. has been substituted for former Attorney General Michael B. Mukasey as the respondent.

**SELYA**, **Circuit Judge**.  The petitioner, Fatah Amouri, is an Algerian national.  He seeks judicial review of a decision of the Board of Immigration Appeals (BIA) ordering his removal and, in the process, denying his prayers for asylum, withholding of removal, and protection under the United Nations Convention Against Torture (CAT).  As a part of his asseverational array, the petitioner advances a due process claim concerning the refusal of the immigration judge (IJ) to grant him a continuance.  After careful consideration, we deny the petition.

## I.  BACKGROUND

We draw the facts from the IJ's supportable findings, augmented where necessary by excerpts from the overall record.

In March of 2001, the petitioner arrived in the United States without inspection.  He remained here illegally.  See 8 U.S.C. § 1182(a)(6)(A)(i).  In 2005, he won a one-year visa in the Diversity Visa Lottery Program.  See Carrillo-González v. INS, 353 F.3d 1077, 1078 n.1 (9th Cir. 2003) (explaining program).  The petitioner's lottery win proved to be a Pyrrhic victory; he received the temporary one-year diversity visa but was deemed ineligible for immigrant status, see 8 U.S.C. § 1182(a)(6), and thus ineligible to receive anything more than the temporary visa.

To make matters worse, the lottery win apparently brought him to the attention of the authorities.  On June 23, 2005, the

government served him with a notice to appear in the immigration court.

The IJ granted a continuance at the petitioner's bequest so that he could explore the possibility of finding a way to take advantage of the lottery visa. Although the petitioner devised a scheme to gain eligibility for adjustment of status by departing from the United States and reentering legally, he eventually abandoned that ploy. Instead, he applied for asylum, withholding of removal, and protection under the CAT.

The continuance that the IJ had granted served to adjourn the removal hearing to September 25, 2006. On that date the petitioner reported that he was unable to avail himself of the opportunity provided by his lottery win. Since the expiration of the one-year temporary visa was imminent, the IJ directed that the merits hearing commence forthwith.

The petitioner's counsel briefly protested that he had not expected to proceed to the merits then and there. The IJ explained why everyone should have anticipated precisely that eventuality. Counsel replied that it would be "okay" to begin immediately as long as he was given time to confer privately with his client. That request was honored. At no point did counsel assert that prejudice would result from going forward that day, nor did he suggest that delaying the trial would enhance the likely

availability of additional documents or witnesses supporting the petitioner's averments.

The petitioner testified that he had suffered persecution in Algeria on account of his political opinion and that he feared future persecution should he be repatriated. Specifically, he related that he had managed a clothing and textiles shop owned by his father; that, in 2000, three or four armed men who identified themselves as "Muslim extremists" entered the store and demanded a large amount of money; and that he temporized by offering to pay the men at a future date. After the intruders left, he reported the incident to the police, who informed him that they would "work on it." They also advised him to take various precautions.

The petitioner decided to close the store and never made the demanded payment. The building was later torched, and the petitioner received a letter from the Islamic Army Group (IAG) charging that he had reneged on his religion and had been "sentenced . . . to death." The police investigated the fire (although the petitioner kept the IAG letter to himself). The investigation proved fruitless.

In the meantime, the petitioner repaired to his grandmother's house in a different village some 800 kilometers away. He remained there for several months until learning that three or four armed men from the IAG had come looking for him. At that point, he fled to the United States.

Even though the one-year deadline for asylum petitions had expired long before the petitioner applied, the IJ allowed the asylum application to proceed based on a finding of extraordinary circumstances. See id. § 1158(a)(2); Chhay v. Mukasey, 540 F.3d 1, 5 (1st Cir. 2008). The Attorney General does not challenge that determination, so we need not discuss the foundation on which it rests. Moreover, notwithstanding that the petitioner's testimony was inconsistent in certain particulars, the IJ deemed him generally credible.

Despite winning these battles, the petitioner lost the war. The IJ ruled that he had failed to demonstrate past persecution on account of a statutorily protected ground. In this regard, the IJ cited the petitioner's lack of any declared political affiliation and the absence of any indication that something other than unmitigated greed lay behind the attempted extortion and the subsequent threats.

The IJ rejected the application for withholding of removal on essentially the same basis. Furthermore, because there was no probative evidence that the Algerian government had either participated or acquiesced in the menacing conduct, the IJ dismissed the CAT claim.

The petitioner appealed to the BIA, without success. The BIA adopted the IJ's findings, reasoning, and conclusions, adding

a few comments about the burden of proof.  This timely petition for judicial review followed.

## II.  DISCUSSION

We begin our analysis with the asylum question.  We move next to the petitioner's other claims for particularized forms of relief.  Finally, we consider the alleged due process violation.

### A.  **The Asylum Claim**.

To establish an entitlement to asylum, an alien must demonstrate that he is a refugee.  8 U.S.C. § 1158(b)(1)(B)(i); Lopez de Hincapie v. Gonzales, 494 F.3d 213, 217 (1st Cir. 2007). To satisfy this requirement, the alien must show that he is unwilling or unable to return to his homeland for fear of "persecution on account of race, religion, nationality, membership in a particular social group, or political opinion."  8 U.S.C. § 1101(a)(42)(A); see, e.g., INS v. Cardoza-Fonseca, 480 U.S. 421, 428 (1987); Makhoul v. Ashcroft, 387 F.3d 75, 79 (1st Cir. 2004). In turn, this entails a showing that the alien has a well-founded fear of future persecution based on one of the five statutorily enumerated grounds.  Makhoul, 387 F.3d at 79.  If the alien adduces probative evidence of past persecution on account of such a ground, that evidence creates a rebuttable presumption of a well-founded fear of future persecution.  Id.

Persecution is a protean term, undefined by statute.  To establish persecution, an alien must demonstrate that the harm

(whether actual or feared) is more than the sum total of ordinary harassment or mistreatment. See Lopez de Hincapie, 494 F.3d at 217. We need not probe that point too deeply; this case involves claimed threats of murder — and threats of murder easily qualify as sufficiently severe harm. Id.

The "on account of" element comprises the linchpin between the harm and a statutorily protected ground. See Raza v. Gonzales, 484 F.3d 125, 128-29 (1st Cir. 2007). To satisfy this nexus requirement, an alien must produce convincing evidence of a causal connection; that is, convincing evidence that the harm was premised on a statutorily protected ground. See Butt v. Keisler, 506 F.3d 86, 90 (1st Cir. 2007); Lopez de Hincapie, 494 F.3d at 218.

Against this backdrop, we turn next to the applicable standard of review. Typically, this court reviews the BIA's decision. See Stroni v. Gonzales, 454 F.3d 82, 86 (1st Cir. 2006). Here, however, the BIA adopted and summarily affirmed the IJ's findings and conclusions. Thus, we review the IJ's decision directly. See id. at 86-87. To the extent that the BIA has made additional comments, we review those comments as well. Id. at 87.

In conducting that review, the familiar substantial evidence rule applies. Under this rule, we accept the agency's factual findings as long as they are supported by substantial evidence in the record. See INS v. Elias-Zacarias, 502 U.S. 478,

481 (1992).  This is a highly deferential standard; the agency's resolution of an issue of fact cannot be overturned unless the record compels a contrary conclusion.  Id. at 481 n.1.  In other words, the record must point unerringly to the opposite conclusion. Laurent v. Ashcroft, 359 F.3d 59, 64 (1st Cir. 2004); Aguilar-Solis v. INS, 168 F.3d 565, 569 (1st Cir. 1999).

In this case, as in most cases, the determination as to whether the petitioner was persecuted on account of a statutorily protected ground is a fact-sensitive determination.  Thus, that determination engenders review under the substantial evidence rule. See Lopez de Hincapie, 494 F.3d at 218.

The petitioner argues that the IJ erred in this case because the attempted extortion and subsequent threats are compelling evidence that he was persecuted on account of his political opinion.  We do not agree.

The IJ found that the most likely impetus for these acts was greed, not politics.  The record contains no significantly probative evidence to the contrary.  Accordingly, the petitioner has failed to forge the needed link between the harm and the statutorily protected ground.

The mere fact that the extortionists were associated with an extremist group does not compel a different conclusion.  After all, fanaticism and a love of money are not mutually exclusive.

Here, moreover, the IJ supportably found no indication that the armed intruders wanted either to coerce the petitioner's adherence to their cause or to punish him for his beliefs. For aught that appears, the men wanted coin of the realm from Amouri, not political conformity.

Laboring to establish a nexus where none exists, the petitioner cites a case that (he says) stands for the proposition that extortion can be part and parcel of a systematic campaign of terror aimed at suppressing political opinion. See Jahed v. INS, 356 F.3d 991, 998-99 (9th Cir. 2004). That case, which involves a government agent's extortionate threat to reveal the petitioner's membership in an outlawed opposition party, is irrelevant here. As we have said, the record here reflects no meaningful ties between political affiliation and the demand for funds.[1]

The petitioner argues that his refusal to honor the monetary demand was itself a manifestation of his political beliefs. This argument is made up out of whole cloth. There is not a shred of evidence in the record that even hints at, much less directly suggests, such an extraordinary leap of logic. The petitioner himself did not testify that this was in his mind, and the IJ surely was not compelled to pluck out of thin air a conclusion to that effect. See Chikkeur v. Mukasey, 514 F.3d 1381,

---

[1] The petitioner's belief that he was persecuted on account of one of the five statutorily protected grounds does not make it so. See Pulisir v. Mukasey, 524 F.3d 302, 309 n.4 (1st Cir. 2008).

1383 (1st Cir. 2008) (upholding a denial of asylum to alien who experienced extortion at the hands of a radical Islamist group and argued that his refusal to give them money was interpreted by them as an expression of political opinion); cf. Olympic Airways v. Husain, 540 U.S. 644, 653 (2004) (holding that an unsupported argument made in a brief was no more than a bald assertion that lacked probative value).

The petitioner's reliance on the death threat is equally misplaced. The petitioner points out that the threat referred to him as a "devil" and as one who had "renege[d]" on his religion. This phrasing, he says, evinces an association with political opinion.[2]

This argument strains credulity. Although the threat used the quoted language, nothing in its context (or elsewhere in the record, for that matter) links that language to any particular political opinion. Thus, we are not compelled to find that the threat was sparked by the petitioner's political viewpoint. See, e.g., Novoa-Umania v. INS, 896 F.2d 1, 5 (1st Cir. 1990).

To say more about the asylum claim would be supererogatory. At best, the petitioner adduced evidence from which a sympathetic factfinder might perhaps have found in his favor. The law is settled, however, that when an IJ makes a choice

---

[2] The comments seem to be more associated with religion than with politics, but the petitioner has never made or developed a claim of religious persecution.

-10-

between two plausible but conflicting inferences, his choice is necessarily supported by substantial evidence. See Lopez de Hincapie, 494 F.3d at 219; Aquilar-Solis, 168 F.3d at 571. Consequently, we uphold the denial of asylum.

## B. **Other Claims**.

We give short shrift to the petitioner's remaining substantive claims. To petition successfully for withholding of removal, an alien must show that, if returned to his homeland, he would more likely than not be subjected to persecution on account of a statutorily protected ground. Pulisir v. Mukasey, 524 F.3d 302, 308 (1st Cir. 2008). The standard is one of clear probability. Cardoza-Fonseca, 480 U.S. at 430; INS v. Stevic, 467 U.S. 407, 425, 430 (1984). When an alien fails to establish a well-founded fear of persecution sufficient to ground an asylum claim, a counterpart claim for withholding of removal (that is, a claim premised on essentially the same facts) necessarily fails. See Lopez de Hincapie, 494 F.3d at 220; Makhoul, 387 F.3d at 82. So it is here.

This leaves the petitioner's CAT claim. To prevail on a CAT claim, an alien must prove that, if repatriated, he will more likely than not be subjected to torture with the consent or acquiescence of the government. See 8 C.F.R. §§ 1208.16(c), 1208.18(a)(1); see also Chhay, 540 F.3d at 7.

In support of his CAT claim, the petitioner relies on various State Department country conditions reports. Generally speaking, country conditions reports can be a valid source of evidence with respect to CAT claims. See, e.g., 8 C.F.R. § 1208.16(c)(3); Pulisir, 525 F.3d at 310. But even though country conditions reports are deemed generally authoritative in immigration proceedings, the contents of such reports do not necessarily override petitioner-specific facts — nor do they always supplant the need for particularized evidence in particular cases. See Zarouite v. Gonzales, 424 F.3d 60, 63-64 (1st Cir. 2005).

In this instance, the most that can be said is that, as the country conditions reports show, Algeria is a haven for terrorists and wracked by random violence. There is no evidence, however, that the government either participates or acquiesces in this violence.

The specific events at issue here indicate precisely the opposite. After the armed men visited the petitioner's shop, the police came to his aid. They agreed to investigate the matter and gave him safety tips. When, thereafter, his store burned down, the police again responded and carried out an investigation. On this record, there is no principled way that we can set aside the denial of the petitioner's CAT claim. See, e.g., Usman v. Holder, 566 F.3d 262, 268-69 (1st Cir. 2009); De Oliveira v. Mukasey, 520 F.3d 78, 79 (1st Cir. 2008).

## C. **The Due Process Claim**.

This brings us to the petitioner's final assignment of error. That plaint arises out of the IJ's refusal to grant the petitioner a further continuance. It amounts to an allegation that the IJ committed a procedural due process violation and, as such, we review the BIA's sub silentio rejection of the claim de novo.[3] See Laurent, 359 F.3d at 62.

We pause to note that this claim may be waived. Although the petitioner's counsel originally objected to the order to go forward on September 25, he appears later to have withdrawn that objection by agreeing to proceed so long as he was given time to confer with his client. That request was granted.

We think that this series of events fairly can be construed as a withdrawal of the petitioner's earlier request for a further continuance. If so, the upshot would be a waiver of this assignment of error. See, e.g., United States v. Rodriguez, 311 F.3d 434, 437 (1st Cir. 2002) (stating that a party who has withdrawn an objection has thereby waived the issue); Nimrod v. Sylvester, 369 F.2d 870, 872 (1st Cir. 1966) (explaining that a

---

[3] The fact that the BIA failed to comment specifically on this claim is of no moment. We previously have noted that an absence of specific findings gives rise to concern only when that circumstance hampers our ability to conduct judicial review. See Rotinsulu v. Mukasey, 515 F.3d 68, 73 n.1 (1st Cir. 2008). Here, the relevant facts are clear and we can readily infer the basis for the denial of the claim.

party cannot advance on appeal an issue as to which he withdrew his objection).

In all events, we need not resolve the waiver question definitively. Because the claim of error is easily dispatched on other grounds, we take a more direct route.

Although an alien is not entitled to a letter-perfect removal hearing, his due process rights must be respected. See Pulisir, 524 F.3d at 311; Baires v. INS, 856 F.2d 89, 91 (9th Cir. 1988). We see error here — but no prejudice and, thus, no affront to due process.

We need not tarry. The grant or denial of a continuance rests largely in the discretion of the trial judge. See, e.g., United States v. Flecha-Maldonado, 373 F.3d 170, 175 (1st Cir. 2004); Macaulay v. Anas, 321 F.3d 45, 49 (1st Cir. 2003). While that authority must be exercised judiciously and with an eye toward fundamental fairness, even the arbitrary denial of a continuance cannot sink to the level of a due process violation unless it results in actual prejudice. See Pulisir, 524 F.3d at 311; United States v. Saccoccia, 58 F.3d 754, 770-71 (1st Cir. 1995); United States v. Lussier, 929 F.2d 25, 28-29 (1st Cir. 1991).

"A court will find such prejudice only when it is shown that an abridgement of due process is likely to have affected the outcome of the proceedings." Pulisir, 534 F.3d at 311. It is not enough for a party to claim conclusorily that, had he been granted

-14-

a continuance, he could have presented additional evidence; rather, he must give a reviewing court some indication of what that evidence would have comprised and how additional time would have allowed him to gather it. See United States v. Rodriguez-Duran, 507 F.3d 749, 765 (1st Cir. 2007). He also must show that the new evidence would likely have altered the outcome of the proceeding. See Shmyhelskyy v. Gonzales, 477 F.3d 474, 482 (7th Cir. 2007).

Here, the petitioner was the lone witness in his own behalf. He offered some documentary evidence. But he made no effort either to call any other witnesses or to offer any other documentary evidence. More importantly, he did not identify below and has not identified here any such witnesses or documents. Instead, he relies exclusively on vague assertions about additional (unnamed) witnesses and additional (unspecified) documents that might have bolstered his testimony. Without some more concrete demonstration that such witnesses and documents existed, were not available at the hearing, and would have supported his story, we can make no finding of prejudice. Consequently, the petitioner's due process claim founders.

## III. CONCLUSION

We need go no further. For the reasons elucidated above, we deny the petition for judicial review.

**So Ordered**.

-15-