OPINION
PER CURIAM.
Luz Barros, a native and citizen of Colombia, and her husband, Paulo De Jesus Barros, a native and citizen of Portugal who resided in Colombia before entering the United States, entered the country in 2002 and 2001 respectively. Both overstayed their visas and the Government issued them Notices to Appear. On June 28, 2002, Luz Barros (“Barros”) filed an application for asylum, withholding of removal, and relief under the Convention Against Torture (“CAT”).[1] In her asylum application, and in her testimony before the Immigration Judge (“IJ”), Barros alleged that she feared that FARC guerillas would kidnap and torture her and her husband if they returned to Colombia.[2] Barros testified that guerillas targeted her and her husband because of the wealth they acquired from them various businesses. Her first encounter with the guerillas was in 1999, when they called her home, threatened her, and demanded money. She also testified that in 2000, the guerillas killed a cow on their property.
Barros testified that she and her husband first came to the U.S. in 1999 to visit family. They did not apply for asylum at that time because they believed that the situation in Colombia would improve. The couple returned to Colombia but came back to the U.S. again in 2001, but again did not apply for asylum because they did not have any documentation. Barros further testified that in 2002 she returned to Colombia to have surgery and that she lived with her parents and two sisters without incident.
*718 The IJ denied the Petitioners’ applications for relief. The IJ found that while Petitioners’ successful business made them targets of guerillas seeking money, their affluence did not qualify as a protected ground for asylum purposes. The IJ further questioned the validity of Barros’ fear given that she returned to Colombia after initially leaving in 1999. The IJ also denied Petitioners’ claims for withholding of removal and protection under CAT. Petitioners appealed to the Board of Immigration Appeals (“BIA”) which adopted and affirmed the IJ’s decision. Petitioners appealed to this Court and we granted the Government’s unopposed motion to remand the case to the BIA in order to address whether wealthy landowners constitute a particular social group. (A.R. at 486-88.)
The BIA remanded the case to the IJ, who held a hearing on the merits of whether the FARC would persecute Petitioners based on their land ownership or based on Paulo de Jesus Barros’ Portuguese nationality. Barros testified that she feared that FARC guerillas would target her because of both her husband’s nationality and her land holdings. The IJ again denied relief, finding that there was no evidence to support Barros’ claim that she would be targeted based on her husband’s Portuguese nationality. Further, the IJ also found that land ownership does not constitute a social group and that the guerillas extorted money from Barros based' on her wealth and not her land holdings. The Petitioners appealed to the BIA which concurred with the IJ’s finding that FARC targeted Barros because of her wealth and that wealthy landowners do not qualify as a social group under the asylum statute. The BIA also agreed that Barros did not present evidence that the couple would be targeted based on her husband’s Portuguese nationality. Petitioners then filed a petition for review in this Court.
We have jurisdiction under 8 U.S.C. § 1252. We uphold the BIA’s determinations if they are supported by reasonable, substantial, and probative evidence on the record considered as a whole. Yusupov v. Att’y Gen., 518 F.3d 185, 197 (3d Cir.2008). Under the substantial evidence standard, the BIA’s determinations “must be upheld unless the evidence not only supports a contrary conclusion, but compels it.” Abdille v. Ashcroft, 242 F.3d 477, 483-84 (3d Cir.2001) (citing INS v. Elias-Zacarias, 502 U.S. 478, 481 n. 1, 112 S.Ct. 812, 117 L.Ed.2d 38 (1992)).
To be granted asylum, Petitioners must show that they are “unable or unwilling to return to [Colombia] ... because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion.” 8 U.S.C. § 1101(a)(42)(A); see also 8 U.S.C. § 1158(b)(1)(A). To be eligible for withholding of removal, Petitioners must demonstrate that “there is a greater-than-fifty-percent chance of persecution” in Colombia based on one of the protected grounds. Senathirajah v. INS, 157 F.3d 210, 215 (3d Cir.1998); see also 8 U.S.C. § 1231(b)(3).
Petitioners argue that the BIA and IJ erred by ignoring evidence of their membership in a social group of wealthy landowners and industrialists.[3] (Petr.’s Br. at 14.) This argument, however, does not address the BIA’s holding that respondents did not show the required “nexus” between their alleged persecution and a statutorily protected ground. See Ndayshimiye v. Att’y Gen., 557 F.3d 124, 129 (3d Cir.2009) (“a key task for any asylum applicant is to show a sufficient *719 ‘nexus’ between persecution and one of the listed protected grounds.”)[4] That is, even if Petitioners’ status as wealthy landowners meets the definition of a “social group” under the asylum statute, they have not produced evidence that the unfortunate incidents Barros’ testified to were a result of their membership in that group. As the Government notes, Barros’s own opinion that the guerillas targeted her family “for who we are, for what we have,” is not sufficient evidence of a connection between the alleged persecution and a social group. See Babani v. Gonzales, 492 F.3d 20, 22 (1st Cir.2007) (per curiam) (petitioner’s opinion is insufficient evidence to show that mistreatment was connected to a protected ground).
Petitioners rely on the Seventh Circuit’s decision in Tapiero de Orejuela v. Gonzales, 423 F.3d 666 (7th Cir.2005), to support their argument. In that case, the Seventh Circuit held that educated, wealthy, landowners in Colombia could qualify as a social group under the asylum statute. Id. at 673. The FARC guerillas in Orejuela threatened the petitioners because the father of the family was a “renowned” cattle rancher and the family was part of a “privileged group” that had gone to schools and universities. Id. at 672. Moreover, the guerillas murdered the husband, tracked the family’s movements, and repeatedly threatened the sons. Id. at 670.
In the instant case, Petitioners attempt to establish that they belong to the same social group as the petitioners in Orejuela by providing evidence of their education, their landownership, and of their business activities. They also point to incidents in which thieves burglarized their home, and assailants lolled a cow on their property, kidnapped the family dog, and threatened them with kidnapping over the telephone. The missing piece, however, is any indication that the incidents were a result of their landownership or business holdings instead of wealth, which they concede does not, standing alone, satisfy the requirements for a “social group.” (Petr.’s Br. at 27.) While we agree with Petitioners that the alleged persecutors need not spell out their motives in order for the BIA to find social group motivated persecution, in the absence of any evidence linking the incidents to Petitioner’s status as wealthy landowners, the record does not compel a different result. See Abdille, 242 F.3d at 494 (“ordinary criminal activity does not rise to the level of persecution necessary to establish eligibility for asylum”); see also Hincapie v. Gonzales, 494 F.3d 213, 219 (1st Cir.2007) (“After all, guerillas and common criminals are equally apt to resort to violent means to accomplish their goals, and it is the alien’s burden to give the adjudicator some basis for differentiation in a given case.”)
We are also unpersuaded by Petitioners’ argument that they face a likelihood of future persecution in Colombia because of their landownership and wealth. Petitioners’ voluntary return to Colombia in 1999, 2001, and Barros’ return in 2002, (A.R. at 579-82), strongly suggests that they do not have a fear of future persecution and cannot, therefore, satisfy the subjective prong of the “well-founded fear” test. See Toloza-Jimenez v. Gonzales, 457 F.3d 155, 161 (1st Cir.2006) (holding that the fact that Toloza “traveled twice to the United States ... and yet she returned to Colombia each time, strongly indicated] that she has no fear of persecution.”). Finally, Petitioners’ failure to demonstrate eligibility for asylum necessarily means that they failed to qualify for withholding of removal. See *720 Ghebrehiwot v. Att’y Gen., 467 F.3d 344, 351 (3d Cir.2006).
For these reasons we will deny the petition for review.

. Paulo De Jesus Barros’ application for asylum is derivative of his wife's application. Therefore, in this opinion "Barros” refers to Luz Marina Barros.

. "FARC” stands for “Fuerzas Armadas Revo-lucionarias de Colombia.” The group was originally established "to serve as the military wing of the Colombian Communist Party.” Tapiero de Orejuela v. Gonzales, 423 F.3d 666, 668 (7th Cir.2005).

. Inasmuch as Petitioners do not argue that the husband’s Portuguese nationality is a basis for relief, we do not consider the merits of that claim. See Konan v. Att’y Gen., 432 F.3d 497, 500 n. 2 (3d Cir.2005).

. Because Petitioners filed their asylum application before the passage of the REAL ID Act of 2005, they are required to show that the persecution was caused "at least in part” by membership in a protected group. Ndayshimiye, 557 F.3d at 129.