Not for Publication in West's Federal Reporter

# United States Court of Appeals
## For the First Circuit

No. 11-1680

ROMELIA AMERICA VARGAS and WALTER ANTONIO VARGAS,

Petitioners,

v.

ERIC H. HOLDER, JR., Attorney General,

Respondent.

PETITION FOR REVIEW OF AN ORDER OF THE
BOARD OF IMMIGRATION APPEALS

Before

Stahl, Lipez, and Howard, <u>Circuit Judges</u>.

<u>Stephen M. Born</u> and <u>Mills & Born</u> on brief for petitioners.
<u>Anthony J. Messuri</u>, Trial Attorney, United States Department
of Justice, Civil Division, Office of Immigration Litigation, <u>Tony
West</u>, Assistant Attorney General, Civil Division, and <u>Leslie McKay</u>,
Assistant Director, Office of Immigration Litigation, on brief for
respondent.

June 7, 2012

**STAHL, <u>Circuit Judge</u>**. Petitioners Romelia America Vargas and her husband, Walter Antonio Vargas, seek our review of an order of the Board of Immigration Appeals (BIA) affirming the denial of their applications for asylum and withholding of removal. As the Immigration Judge (IJ) in this case noted, the Vargases "have presented an extraordinarily compelling case of suffering." Unfortunately, however, what the Vargases experienced in their native country of Guatemala does not make them eligible for asylum or withholding of removal in the United States.

In order to qualify for asylum, an applicant must demonstrate that he has experienced past persecution or has a well-founded fear of future persecution on account of his race, religion, nationality, membership in a particular social group, or political opinion. <u>See</u> 8 U.S.C. § 1101(a)(42)(A). The standard for withholding of removal is even higher; the applicant must show that it is more likely than not that he would be subject to persecution on account of an enumerated ground if he were repatriated. <u>See</u> <u>id.</u> § 1231(b)(3); <u>Mayorga-Vidal</u> v. <u>Holder</u>, 675 F.3d 9, 13 (1st Cir. 2012). The Vargases applied for asylum and withholding of removal, claiming that they were persecuted, and face future persecution, at the hands of Guatemalan gang members, on account of their perceived political opposition to gangs and their membership in a social group comprised of businesspeople from a well-known business family.

We summarize only briefly the evidence that the Vargases presented to the immigration court. Mr. Vargas's family was in the trucking business in Guatemala for many years. His father, the owner of the family company, received threats and extortion demands from gang members beginning in 1993 and made regular payments to those gang members until 2003, when his company went out of business. The Vargases themselves began being targeted by gang members in January 2004, when they opened a furniture store in Guatemala City. The gang members demanded payments from the Vargases in person, in writing, and by phone, and made explicit threats against them and their young daughter. The gang members also touched Ms. Vargas inappropriately with a knife on more than one occasion and told her that they would cut her daughter into pieces if she and her husband did not pay them.

In April 2004, the Vargases closed the furniture store, because they could not afford to keep paying off the gang members or to put their family in continued danger. But the gang members kept targeting them. Armed men chased Ms. Vargas in her car, and the Vargases received more threatening phone calls and notes. At the end of 2004, the Vargases moved to another part of Guatemala in search of refuge, but drug dealers there tried to coerce Mr. Vargas into carrying drugs for them into the United States. In 2005, believing they were not safe in Guatemala, the Vargases came to this country.

The IJ found the Vargases credible but, somewhat reluctantly, denied their applications for asylum. She concluded that those applications were untimely (an issue that the BIA did not address and that we need not reach on appeal) and that the Vargases had not demonstrated past persecution or a well-founded fear of future persecution on account of a statutorily-protected ground. The BIA affirmed, providing its own analysis; we therefore focus our review on the BIA's decision. Vásquez v. Holder, 635 F.3d 563, 565 (1st Cir. 2011).

An applicant for asylum or withholding of removal "must produce convincing evidence" that he was persecuted (or has a well-founded fear of future persecution) "on account of" a statutorily-protected ground. Amouri v. Holder, 572 F.3d 29, 33 (1st Cir. 2009). The BIA found that the Vargases had failed to satisfy that "nexus requirement" with regard to both their political opinion and social group claims. We review the BIA's conclusion under the "substantial evidence" standard, id. at 34, giving deference to the agency's findings as long as they are supported by the record as a whole, or, in other words, "unless the record compels a contrary conclusion," id. at 33.

We begin with the Vargases' political opinion claim. They argue that, while they never expressed a particular political opinion to the gang members who threatened them, those gang members imputed to the Vargases "the political opinion of opposition to

-4-

their criminal lifestyle." A claim of persecution can certainly be based on an imputed political opinion, see Vásquez v. INS, 177 F.3d 62, 65 (1st Cir. 1999), but the Vargases have not pointed to any evidence on the record, much less any "convincing evidence," that the gang members harmed them because they imputed a particular political opinion to the Vargases, Amouri, 572 F.3d at 33. See also Mayorga-Vidal, 675 F.3d at 18 (rejecting political opinion claim where the petitioner did not point to evidence that the gang members who targeted him "understood that his mere refusal to join their ranks was an expression of an anti-gang, pro-establishment political opinion"); Socop v. Holder, 407 F. App'x 495, 499 (1st Cir. 2011) (agreeing with the BIA that the petitioner's "refusal to join a gang, without more, did not qualify as the expression of a political opinion"). Indeed, during their removal hearing, the Vargases testified that the gang members' calls and visits were aimed at extracting money from them. We have repeatedly held that such extortion, without more, does not constitute political persecution. See, e.g., Perez-Valenzuela v. Holder, 363 F. App'x 759, 760 (1st Cir. 2010) (rejecting withholding of removal claim where petitioner described gangs "as driven by money"); López-Castro v. Holder, 577 F.3d 49, 54 (1st Cir. 2009) ("A country-wide risk of victimization through economic terrorism is not the functional equivalent of a statutorily protected ground . . . ."); Lopez de Hincapie v. Gonzales, 494 F.3d 213, 219 (1st Cir. 2007)

(rejecting asylum and withholding of removal claims where evidence suggested that petitioner was targeted "because of greed, not because of her political opinion"); Quevedo v. Ashcroft, 336 F.3d 39, 44 (1st Cir. 2003) ("This Circuit has rejected the contention that pervasive non-political criminality in Guatemala constitutes a basis for asylum.").

Substantial evidence also supports the BIA's conclusion that the Vargases failed to prove that they were targeted on account of a cognizable social group. The Vargases claim that the gang members threatened them because they were businesspeople from a well-known business family, not because of their wealth (or perceived wealth), but they have not supported that bare allegation with any "convincing evidence of a causal connection" between the harm they experienced and their family membership. Amouri, 572 F.3d at 33. Indeed, the evidence suggests that the gang members were motivated by a desire to obtain money from the Vargases, and "[w]e have . . . rejected social groups based solely on perceived wealth, even if signaling an increased vulnerability to crime." Garcia-Callejas v. Holder, 666 F.3d 828, 830 (1st Cir. 2012); see also Diaz v. Holder, 459 F. App'x 4, 6 (1st Cir. 2012) (rejecting social group comprised of "persons of perceived wealth returning to Guatemala from the United States"); Sicaju-Diaz v. Holder, 663 F.3d 1, 4 (1st Cir. 2011) ("[N]othing indicates that in Guatemala individuals perceived to be wealthy are persecuted because they

belong to a social class or group."); <u>Perez-Valenzuela</u>, 363 F. App'x at 760 (rejecting social group of "Guatemalan men perceived by gang members to have disposable money available"); <u>Lopez de Hincapie</u>, 494 F.3d at 219 (rejecting social group claim where the evidence suggested that the petitioner was targeted "because of greed," not because of her family membership).[1]

We, like the IJ, have sympathy for the Vargases, but their failure to demonstrate that they were persecuted "on account of" a statutorily-protected ground dooms both their asylum and withholding of removal applications. <u>Lopez de Hincapie</u>, 494 F.3d at 220 (noting that the nexus requirement is common to the tests for both asylum and withholding of removal). What the Vargases experienced in Guatemala appears to have been the kind of "economic terrorism," <u>López-Castro</u>, 577 F.3d at 54, and "pervasive non-political criminality," <u>Quevedo</u>, 336 F.3d at 44, that we have repeatedly held do not constitute grounds for asylum or withholding of removal. We therefore <u>deny</u> the petition for review.

---

[1] Because the Vargases' claims fail for other reasons, we need not address the BIA's additional findings that: (1) the Vargases' proposed social group lacks particularity and social visibility; and (2) the Vargases did not prove that the Guatemalan government was unwilling or unable to protect them. <u>See, e.g.</u>, <u>Mayorga-Vidal</u>, 675 F.3d at 14 (stating that a legally cognizable social group must share a "common, immutable characteristic that makes the group socially visible . . . and sufficiently particular"); <u>Jorgji</u> v. <u>Mukasey</u>, 514 F.3d 53, 57 (1st Cir. 2008) (explaining that if the government is not directly responsible for persecution, "there must be some showing that the persecution is due to the government's unwillingness or inability to control the conduct of private actors").