**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 12-1001
_____

FNU EVAH,

                Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES,

                Respondent

_____

On Petition for Review of an Order of the
Board of Immigration Appeals
(Agency No. A097-703-347)
Immigration Judge:  Honorable Charles M. Honeyman

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
May 16, 2012

Before: SMITH, HARDIMAN and ROTH, <u>Circuit</u> <u>Judges</u>

(Opinion filed: June 21, 2012)
_____

OPINION
_____

PER CURIAM

      Fnu Evah petitions for review of a Board of Immigration Appeals (BIA) decision

denying her application for asylum and withholding of removal and ordering her removed

to Indonesia.  For the following reasons, we will deny the petition for review.

I.

Evah, a native and citizen of Indonesia, is a Christian of Chinese descent. As developed in her affidavits and testimony, three separate incidents informed her eventual flight from her home country. In May 1998, during an anti-Chinese riot in Jakarta, a mob invaded and looted her store. One year later, during another disturbance, Evah and her boyfriend were beaten by assailants (described as "Indonesian Muslims"), and their store and house were burned down. In the aftermath, Evah and her children sought refuge in a Buddhist temple; Evah later managed to find work in Taiwan. At the end of her time in Taiwan, Evah returned to Indonesia. The final incident, in July 2006, involved an episode of anti-Christian sentiment, accompanied by threats of future violence, directed at a Christian prayer group.

Evah traveled to the United States, where she was admitted as a nonimmigrant visitor for pleasure. She eventually came to the attention of authorities by working for wages or other compensation without permission, in violation of 8 U.S.C. § 1227(a)(1)(C)(i). The Government commenced removal proceedings. The first hearings in her case were held in 2007, at which time she conceded removability. Evah eventually applied for asylum and withholding of removal based upon her mistreatment in Indonesia.[1]

---

[1] Evah also applied for protection under the Convention Against Torture, but would later abandon those claims. See, e.g., Administrative Record (A.R.) 137.

At the main merits hearing on July 13, 2010, Evah testified that she was afraid of being "killed and raped" by "native Indonesians" if she were to return to her home country. Administrative Record (A.R.) 147. During cross examination, counsel for the Government emphasized the lack of record documentation in support of Evah's story, such as "any documentation to support [the] claim that [the] house and [the] store were burned to the ground." A.R. 147.

In an oral decision rendered after the close of testimony, the Immigration Judge (IJ) declined to grant asylum and withholding of removal. While finding Evah to be generally credible, A.R. 41, the IJ expressed concern that "there [wa]s virtually no corroboration of any kind in this record of anything." A.R. 41. He pointed out a "number of areas where the Court believes it would have been reasonable to present some degree of corroboration" in order to "paint at least a mosaic of what happened to the respondent in Indonesia, separate and apart from whether or not that rises to the level of past persecution." A.R. 41. The IJ cited, as possible examples of corroborating evidence, letters from family members, some documentation regarding ownership of the house or store, letters from attendees at the interrupted 2006 prayer service, and so on. A.R. 42–43. In sum, the IJ found that Evah had "not suffered with sufficient severity to establish past persecution." A.R. 43. Also, after "careful consideration of and analysis of all the exhibits in the record, both individually and cumulatively," he separately concluded that Evah had not shown a likelihood of future persecution in Indonesia were she to return. A.R. 47.

Evah appealed the decision to the BIA, arguing that the IJ erred in his past-persecution finding and by "ignor[ing] the weight of the evidence on the record which confirmed a pattern or practice of persecution against Chinese Christians." A.R. 19 (adjusted to sentence case). The BIA dismissed the appeal, primarily on the basis of corroboration; as Evah had "failed to sufficiently support her claim with corroboration as requested by the Immigration Judge, [the BIA] agree[d] with the Immigration Judge that [she] failed to meet her burden of proof." A.R. 4. It also upheld the IJ's pattern-or-practice finding. A.R. 4. This counseled petition for review followed.

II.

We have jurisdiction under 8 U.S.C. § 1252(a)(1), reviewing primarily the decision of the BIA, but looking to the decision of the IJ to the extent that the BIA adopted or deferred to it. See Garcia v. Att'y Gen., 665 F.3d 496, 502 (3d Cir. 2011). Our review is conducted under the substantial-evidence standard, which requires us to uphold administrative findings of fact unless any reasonable adjudicator would be compelled to conclude to the contrary. Lin v. Att'y Gen., 543 F.3d 114, 119 (3d Cir. 2008); see also 8 U.S.C. § 1252(b)(4)(B). Because Evah's asylum application was filed after May 11, 2005, the provisions of the REAL ID Act of 2005 apply in this case. See Dong v. Att'y Gen, 638 F.3d 223, 229 n.3 (3d Cir. 2011).

In an application for asylum or its derivative relief, the burden of proof is on the alien to show that she is a refugee, defined as, inter alia, a person who is unwilling or unable to return to her home country "because of persecution or a well-founded fear of

4

persecution" based on an enumerated ground. 8 U.S.C. §§ 1101(a)(42)(A), 1158(b)(1)(B). There are two independent pathways by which she may proceed. First, upon a successful showing of past persecution, she would be entitled to a rebuttable presumption of a well-founded fear of future persecution. Gomez-Zuluaga v. Att'y Gen., 527 F.3d 330, 341 (3d Cir. 2008). Alternatively, "it is not necessary for a petitioner to show past persecution if she can nonetheless show a well-founded fear of future persecution without the benefit of such a presumption." Id. at 345. In order to establish eligibility for withholding of removal, an alien must demonstrate that it is more likely than not that her life or freedom would be threatened in Indonesia on account of a protected ground. 8 U.S.C. § 1231(b)(3)(A).

III.

a) Past Persecution

Evah argues that the BIA and IJ erred by requiring corroboration of her story. She maintains, in addition, that the IJ and BIA failed to comply with the procedural requirements for requesting and presenting corroborating evidence.

"[C]orroboration and credibility, although intuitively related, are distinct concepts that should be analyzed independently." Toure v. Att'y Gen., 443 F.3d 310, 323 (3d Cir. 2006). Hence, the IJ's conclusion that Evah testified credibly is not the end of the inquiry. While "[t]he testimony of the applicant may be sufficient to sustain the applicant's burden without corroboration," the trier of fact may determine "that the applicant should provide evidence that corroborates otherwise credible testimony." 8

5

U.S.C. § 1158(b)(1)(b)(ii). If the agency decides that corroboration is appropriate, "such evidence must be provided unless the applicant does not have the evidence and cannot reasonably obtain the evidence." Id.; see also Dong, 638 F.3d at 229 n.3. The corroboration process contemplates a three-part inquiry: "(1) an identification of the facts for which it is reasonable to expect corroboration; (2) an inquiry as to whether the applicant has provided information corroborating the relevant facts; and, if he or she has not, (3) an analysis of whether the applicant has adequately explained his or her failure to do so." Abdulai v. Ashcroft, 239 F.3d 542, 554 (3d Cir. 2001) (internal quotation marks omitted). "It is reasonable to expect corroboration where the facts are central to the applicant's claim and easily subject to verification." Chukwu v. Att'y Gen., 484 F.3d 185, 192 (3d Cir. 2007)

In his opinion, the IJ lamented the general lack of corroboration in the record. We agree with Evah that some of his observations, such as Evah's failure to corroborate her church attendance in Indonesia, A.R. 37, arguably pertained to aspects of her claim that were not "central" to her story. Nevertheless, we conclude that the agency properly held that Evah failed to meet her burden of proof due to the paucity of corroborating information in the record. Both the IJ and BIA followed the three-part Abdulai test, identifying areas where it would be reasonable to expect corroboration and examples of such corroboration—for example, *any* evidence or third-person account of the 1999 destruction of her home, an incident that was undoubtedly central to her application for

6

relief.  See A.R. 3, 38, 42.[2]  They noted that Evah had not presented such evidence and had offered no real explanation for her failure to do so.  Moreover, several years passed between her initial apprehension by authorities and her eventual merits hearing, and while we recognize that not all of the material identified by the agency may have been obtainable, the bare minimum of what was requested by the IJ, such as letters from family members, was well within reach.  See, e.g., A.R. 146 (showing that the petitioner was in contact with her children as of 2010).  This is not a case in which the agency demanded corroboration above and beyond what the petitioner had already provided, but rather a case where *no* corroboration of any essential elements was put forward.  Hence, we cannot find error in the agency's decision.  See also 8 U.S.C. § 1252(b)(4) (establishing stringent standard for reversal based on availability of corroborating evidence).

Evah also argues that the IJ failed to provide her with an opportunity to present the corroborating documents that he had requested.  See Pet'r's Br. 25; see also Chukwu, 484 F.3d at 192.  This claim was not raised below, and we therefore lack jurisdiction to consider it.  See 8 U.S.C. § 1252(d)(1); Castro v. Att'y Gen., 671 F.3d 356, 365 (3d Cir.

---

[2] Through counsel, Evah argues that her children "could not corroborate that [her] home was burned to the ground where she testified they were not present when the home was burned."  Pet'r's Br. 24.  However, the page she cites appears to suggest to the contrary. See A.R. 320 ("In May of 1999, my family and I were in the house . . . .").  Nothing in Evah's testimony supports her current argument that the children were not present when the house was burned.

2012).[3]

> b) Future Persecution

Evah maintains that her submissions to the agency, as well as her testimony, "established a pattern and practice of persecution of Christians in Indonesia," and accuses the IJ of failing "to meaningfully consider the evidence submitted in this particular record, including the expert affidavits relating to the persecution of ethnic Chinese Christians throughout Indonesia." Pet'r's Br. 33. However, we agree with the BIA that the IJ's decision reflects a careful review of the evidence. See A.R. 4; see also A.R. 29 (revealing that the IJ considered "the contents of Dr. Winter's affidavit . . . along with the affidavit from Jana Mason"). The IJ acknowledged ongoing problems that "Christians continue to face in various areas of Indonesia," but held that the turmoil did not rise to a level constituting a pattern or practice of persecution—that is, a level reflecting "systemic, pervasive, or organized" persecution. Wong v. Att'y Gen., 539 F.3d 225, 233 (3d Cir. 2008) (citations omitted).[4] While a reasonable observer could plausibly draw a

---

[3] The BIA's decision to address generally the matter of corroboration, which was sufficient to grant us jurisdiction over that broader question, see Valdiviezo-Galdamez v. Att'y Gen., 663 F.3d 582, 593 (3d Cir. 2011), did not serve to exhaust the specific matter of whether all procedural requirements were complied with. This is of particular import in situations where the agency could have easily corrected its error by remanding for further fact-finding or reopening proceedings. As the record demonstrates no attempt by Evah to "place the [BIA] on notice of a straightforward issue being raised on appeal," Lin v. Att'y Gen., 543 F.3d 114, 121 (3d Cir. 2008) (quotations, citations omitted), and as the BIA did not consider the matter on its own, we may not reach the issue.

[4] We note that Evah has explicitly stated that she is not pursuing relief based on her potential for being singled out for harm if returned to Indonesia. See Pet'r's Br. 20; see also Tampubolon v. Holder, 610 F.3d 1056, 1062 (9th Cir. 2010).

different conclusion from the record evidence, "[w]here the record supports plausible but conflicting inferences in an immigration case, the . . . choice between those inferences is, a fortiori, supported by substantial evidence." De Hincapie v. Gonzales, 494 F.3d 213, 219 (1st Cir. 2007). In sum, substantial evidence supports the agency's finding on future persecution.

### c) Withholding of Removal

Because Evah failed to qualify for asylum, she is necessarily ineligible for withholding of removal. Ghebrehiwot v. Att'y Gen., 467 F.3d 344, 351 (3d Cir. 2006).

## IV.

In sum, and for the foregoing reasons, we will deny Evah's petition for review.