NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 12-1897
_____

TJAE BO THAM,
Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES
_____

On Petition for Review of an Order of the
Board of Immigration Appeals
(Agency No. A088-648-666)
Immigration Judge:  Honorable Charles M. Honeyman
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
November 1, 2012

Before:  FISHER, GARTH and ROTH, Circuit Judges.

(Filed: November 8, 2012)
_____

OPINION
_____

PER CURIAM

     Petitioner Tjae Bo Tham petitions for review of a final order of removal issued by

the Board of Immigration Appeals (BIA).  The petition will be denied.

     Tham, an ethic Chinese Buddhist native and citizen of Makassar, Indonesia,

entered the United States in 2004 as a nonimmigrant visitor for pleasure on a six-month

visa. Administrative Record (A.R.) 215. He overstayed, and in 2008 was charged with removability pursuant to 8 U.S.C. § 1227(a)(1)(B). A.R. 213; see also A.R. 78-79 (conceding charges at hearing).

Represented by counsel, Tham filed an I-589 application for asylum and related relief in April 2009. See A.R. 162-69. He indicated on the application form that he was seeking asylum or withholding of removal based on race and political opinion, and was also interested in relief under the Convention Against Torture (CAT). A.R. 166. Tham's affidavit, which accompanied his application, detailed three kidnapping attempts on his daughter as well as the repeated burglary of his residence in Makassar city. He explained that fees in Makassar city "are high," and because "many people [do not] have jobs . . . they think that kidnapping children . . . [i]s easier" and lucrative. A.R. 173. Tham appealed to the agency to approve his application so that his daughter could "still attend school in America and live safe in America." A.R. 173. Strikingly, nowhere in Tham's affidavit did he attempt to tie these experiences to his race or political opinions. Outside of sundry identification materials, Tham attached one documentary exhibit in support of his application: the State Department's 2008 Human Rights Report on Indonesia. See A.R. 128-53.

In Tham's hearings before the Immigration Judge (IJ), he conceded through counsel that he was not eligible for asylum and was no longer pursuing CAT relief, A.R. 86, 96, limiting the scope of his application to withholding of removal only. Tham testified that he was "not very familiar" with the people who attempted to kidnap his

daughter, A.R. 108, and that he did not generally report similar incidents because the police discriminate against ethnic Chinese immigrants, A.R. 108. He briefly spoke about both the frequent burglaries of his house and a 1998 knife attack by unidentified persons who demanded money. A.R. 112, 117. Tham discussed his Buddhist religion, but the IJ noted that nothing in Tham's written materials pertained to Buddhism or discrimination against Buddhists. See, e.g., 110-11. In explaining his fear of returning to Indonesia, Tham cited the many "hoodlums, gangsters . . . and/or people who are anti-Chinese immigrants" who lived in his region. A.R. 114.

The IJ denied relief in an oral opinion. With regard to past persecution, he held that none of "the actions taken against the respondent directly, or indirectly, either individually, or cumulatively, would be sufficient for a finding of past persecution" because, inter alia, Tham had failed to show a "compelling nexus to one of the statutory grounds" that would entitle him to relief. A.R. 70, 72. And while acknowledging "some anti-Chinese animus in [Tham's] community," the IJ nevertheless concluded that there was insufficient support in the record for a "pattern or practice" or "clear probability of future persecution" finding. A.R. 72-73. Tham appealed, and the BIA affirmed the IJ's decision. The BIA "agree[d] . . . with the Immigration Judge that [Tham] did not demonstrate that his past mistreatment . . . was on account of a protected ground." A.R. 3-4. It also determined that the evidence failed to establish a "pattern or practice of persecution of Chinese citizens in Indonesia." A.R. 4. The BIA declined to review

3

Tham's CAT claim because it had been withdrawn at the time of his hearing. A.R. 4 (citing A.R. 96). Tham timely sought review of the BIA's decision.

We have jurisdiction under 8 U.S.C. § 1252, and we review the BIA's decision. See Totimeh v. Att'y Gen., 666 F.3d 109, 113 (3d Cir. 2012).[1] "Our review of factual findings, including findings of persecution and fear of persecution, is for substantial evidence, which means we must uphold findings of fact unless the record evidence *compels* a contrary finding." Yuan v. Att'y Gen., 642 F.3d 420, 425 (3d Cir. 2011) (emphasis added).

Withholding of removal prevents an alien's deportation to a country where his "life or freedom would be threatened . . . because of [his] race, religion, nationality, membership in a particular social group, or political opinion" [hereinafter "protected grounds"]. 8 U.S.C. § 1231(b)(3)(A). There are two paths by which an alien may show that he qualifies for withholding of removal. First, if he has suffered past persecution in the relevant country, "a rebuttable presumption of future persecution applies." Garcia v. Att'y Gen., 665 F.3d 496, 505 (3d Cir. 2011). Second, even if he cannot show past persecution, an alien may independently meet his burden by demonstrating that there is a "clear probability" that, if returned to his country, he would be persecuted on one of the

---

[1] We agree with the Government that Tham's application for withholding of removal is the only request for relief properly presented to the agency and, thus, is the sole claim in the petition for review. Tham did not challenge the untimeliness of his asylum application before the agency, and even if he had, we likely would lack jurisdiction to review the agency's decision. 8 U.S.C. §§ 1158(a)(3), 1252(d)(1); see also Mudric v. Att'y Gen., 469 F.3d 94, 101 (3d Cir. 2006).

4

protected grounds by forces that the government is either unable or unwilling to control. Id. (citations omitted). In this context, "clear probability" means "more likely than not." Li v. Att'y Gen., 633 F.3d 136, 140 (3d Cir. 2011); see also Senathirajah v. INS, 157 F.3d 210, 215 (3d Cir. 1998) (noting that petitioner must show a "greater-than-fifty-percent" chance of future persecution under the withholding standard). This is a higher quantum of proof than the "well-founded fear" metric used for asylum applications, under which an applicant can prevail even "when there is less than a 50% chance of the [feared] occurrence taking place." INS v. Cardoza-Fonseca, 480 U.S. 421, 431 (1987); see also Zubeda v. Ashcroft, 333 F.3d 463, 469-70 (3d Cir. 2003) (failure under asylum standard necessarily constitutes failure under withholding standard).

The administrative record more than suffices to support the agency's decision, requiring us to deny this petition for review. Tham failed to tether his claims of mistreatment to one of the protected grounds, railing instead against the general lawlessness pervading his community. It is well established, however, that criminal conduct motivated by arbitrary hostility or pecuniary gain does not rise to the level of "persecution" under the relevant statutes; nor does "generalized lawlessness." See Abdille v. Ashcroft, 242 F.3d 477, 494 (3d Cir. 2001). Tham argues that he "testified credibly . . . [about] several incidents he encountered in Indonesia on account of his Chinese ethnicity," Pet'r Br. 3, but his inference of anti-Chinese animus is but one of many that the record supports; he admitted that he could not readily identify the various different assailants, and his concerns about "hoodlums" and "gangsters" received higher

5

billing than those about "people who are anti-Chinese immigrants." A.R. 108, 114. On a record that supports conflicting inferences, the agency's choice between them is, under our deferential standard, backed by substantial evidence. See Lopez de Hincapie v. Gonzales, 494 F.3d 213, 219 (1st Cir. 2007). While we have no doubt that the kidnapping attempts, burglaries, and assaults about which Tham testified were frightening to him and his family, this fear alone is not sufficient for relief. Cf. Ritonga v. Holder, 633 F.3d 971, 976 (10th Cir. 2011). Finally, Tham failed to show a clear probability that he would be subject to individualized persecution in Indonesia or that there existed a pattern or practice of persecution of persons similarly situated to him. See Lie v. Ashcroft, 396 F.3d 530, 537-38 (3d Cir. 2005).[2]

---

[2] In his brief, he refers to State Department reports from 2002 and 2003. Because these reports were not before the agency, we will not to consider them. See 8 U.S.C. § 1252(b)(4)(A) ("[T]he court of appeals shall decide the petition only on the administrative record on which the order of removal is based.").

6

Thus, for the foregoing reasons, this petition for review will be denied.[3]

---

[3] We would be remiss if we did not briefly address the inadequate brief prepared by Tham's counsel, Christopher B. Jones, which suffers from inadequacies similar to those we have seen fit to note in other cases. See, e.g., Budiyono v. Att'y Gen., 181 F. App'x 332, 334-35 & n.3 (3d Cir. 2006). Among other things, the brief prepared by Mr. Jones: (1) inaccurately states that the BIA affirmed the IJ's ruling "without opinion"; (2) refers in places to the claims of "respondents," plural, though Tham is the petitioner and the only one; (3) misstates the basis for Tham's claim by stating at one point that he is a "Chinese Catholic[]," though in fact he testified that he is Buddhist; (4) refers to materials outside of the administrative record, see supra note 2; and, perhaps most disturbingly, (5) argues the merits of Tham's application for *asylum* even though the IJ denied that application as untimely, a ruling that we lack jurisdiction to review and that Tham does not contest in any event, and even though the only substantive claim before us is one for *withholding of removal*, which is governed by a different standard that the brief does not even address. Mr. Jones's submissions to the agency, as contained in the administrative record, suffered from similar deficiencies. See, e.g., A.R. 14-15 (characterizing, in BIA brief, the attempted kidnapping of Tham's daughter as "rape incidents" and "sexual assault incidents," while referring to "well-founded fear" and belatedly re-invoking the abandoned CAT claim). These derelictions have not prevented us from reviewing the agency's denial of Tham's withholding claim, which there is no basis to disturb for the reasons explained above. But at the same time, they certainly have not facilitated our review, and we urge Mr. Jones not to repeat them in any brief he might file with this Court in the future. See Budiyono, 181 F. App'x at 334 n.3 (noting the referral to this Court's Disciplinary Committee of immigration counsel who repeatedly filed inadequate briefs).