**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 12-2196
_____

GILMAR PACHECO FERREIRA,
                              Petitioner,
v.

ATTORNEY GENERAL OF THE UNITED STATES,
                              Respondent
_____

On a Petition For Review of an Order
of the Board of Immigration Appeals
(Agency No. A088-001-305)
Immigration Judge: Annie S. Garcy
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
February 7, 2013
Before:  SMITH, GREENAWAY, JR., and WEIS, Circuit Judges

(Opinion filed: February 13, 2013 )
_____

OPINION
_____

PER CURIAM.

    Gilmar Pacheco Ferreira ("Ferreira") petitions for review of the Board of

Immigration Appeals' final order of removal.  For the reasons that follow, we will deny

the petition for review.

1

Ferreira, a native and citizen of Brazil, entered the United States in September, 1997, on a B-2 non-immigrant visa and overstayed. After he failed to obtain lawful permanent resident status based on a petition for labor certification, the Department of Homeland Security served him with a Notice to Appear, which charged that he was removable under Immigration & Nationality Act ("INA") § 237(a)(1)(B), 8 U.S.C. § 1227(a)(1)(B), as an alien who remained for a time longer than permitted. Ferreira appeared in Immigration Court in July, 2009, conceded the charges, and applied for asylum under INA § 208(a), 8 U.S.C. § 1158(a), and withholding of removal under INA § 241(b)(3), 8 U.S.C. § 1231(b)(3), claiming a fear of persecution on account of his membership in a particular social group, which he described as his sexual orientation and HIV positive status.

In his application, Ferreira stated that he was born in Alpercata, Brazil on July 21, 1963. His father is deceased but his mother still lives in his hometown of Coronel Fabriciano in the state Minas Gerais. When he was 15 years old, he was lured by another young man into the countryside under the false pretense that the young man wanted to have sexual relations with him. After he began to undress, Ferreira saw two other men there, so he quickly dressed and ran away. Ferreira stated that the men pursued him on their motorcycles and they were carrying guns, but he was able to escape by running toward some houses and hiding under a car. Ferreira claimed that these men had intended all along to kill him because he was gay. He did not consider asking the police for help because the police are hostile to gay men and because he feared revealing his sexual orientation to his family. Ferreira also stated that when he was 18 years old, he

2

had sexual relations with a man who was 28 years old. Afterwards, the man brandished a knife and took Ferreira's watch. Again he did not report the incident to the police for the same reasons as before. Ferreira further claimed that he and his gay friends were harassed on the streets of Coronel Fabriciano on the basis of their sexual orientation. He claimed that a transsexual friend of his was murdered in a hotel after the assailant falsely claimed that his friend pretended to be a woman. Ferreira learned that he is HIV positive in 2003. He stated that he fears returning to Brazil because he would be beaten or killed on account of his sexual orientation and the Brazilian authorities would not protect him. When asked whether there is any place in Brazil where he would not be afraid of being harmed because of his sexual orientation and HIV status, he answered "No." A.R. 98.

Ferreira testified at his merits hearing on June 24, 2010 in support of his applications for relief. He explained that in the first incident that occurred when he was only 15 he did not think the men were interested in sex; they simply wanted to kill him because he was gay. A.R. 95. Ferreira testified that there was an attack at a gay pride parade in Sao Paulo recently at which a bomb killed one person, and it was later discovered that a retired police officer had been involved in the bombing. Ferreira also testified that the interior of Brazil is more homophobic than the urban areas and that he is used to country life and does not have family or friends in the city.

In addition to his testimony and application, Ferreira offered into evidence the State Department's 2009 Human Rights Report on Brazil, which states that: "Federal law does not prohibit discrimination based on sexual orientation, but several states and municipalities such as Sao Paulo had administrative regulations that bar discrimination

3

based on sexual orientation and provide for equal access to government services." A.R. 140. It also states that the nongovernmental Bahia Gay Group received 115 reports of killings based on sexual orientation and gender identity, a decrease from 188 during the same period in 2008. See id. Parana State had the most cases of killings of gay men, followed by the states of Bahia and Sao Paulo. See id. Ferreira also submitted articles discussing discrimination against gay men in Brazil.

The IJ issued an oral decision denying Ferreira's applications but granting him voluntary departure for a period of 60 days. The IJ determined that the application for asylum had not been timely filed within one year of Ferreira's entry into the United States, and that he did not demonstrate that he qualified for any of the exceptions. With respect to withholding of removing, the IJ found Ferreira to be credible and recognized that Ferreira's claimed social groups qualified for protection under the INA, citing Amanfi v. Ashcroft, 328 F.3d 719 (3d Cir. 2003). But the IJ determined that Ferreira's evidence of past persecution was insufficient. The IJ found that the incidents described were random criminal acts that did not result in serious injury. Moreover, Ferreira's lack of confidence in the Brazilian police was insufficient to show that the police were unable or unwilling to intervene. He offered no evidence to show that the police were complicit in any of the harm he suffered.

Ferreira thus was not entitled to the presumption of a likelihood of future persecution. The IJ then determined that there was insufficient evidence of systematic or pervasive persecution of gay men in Brazil. The IJ acknowledged that Brazil lacks a national anti-discrimination law. The IJ also acknowledged the nongovernmental

4

organization report of murders of gay men (observing that Minas Gerais was not among the states with the most murders), and acknowledged that, in March, 2002, a gay male choreographer was murdered in Minas Gerais, but reasoned that these things fell short of establishing a pattern or practice of persecution. The IJ further concluded that Ferreira's evidence that he would be discriminated against on the basis of his HIV positive status was insufficient. Last, the IJ concluded that Ferreira could relocate to a safer part of Brazil to avoid the threats he claimed prevailed in his home state, noting that municipalities such as Sao Paulo have regulations that bar discrimination on the basis of sexual orientation. The IJ granted Ferreira voluntary departure and alternately ordered his removal to Brazil.

Ferreira appealed to the Board of Immigration Appeals, challenging only the IJ's determination that he failed to establish past or future persecution on account of his sexual orientation. He did not challenge the IJ's determination that his asylum application was untimely filed. On March 30, 2012, the Board dismissed the appeal. The Board first held that Ferreira had waived any challenge to the IJ's determination that his asylum application was untimely. Regarding the claim for withholding of removal, the Board concluded that the IJ did not err in determining that Ferreira had failed to establish past or future persecution on account of his sexual orientation. The Board agreed with the IJ that the two incidents did not rise to the level of persecution. The Board supplemented the IJ's analysis, determining that Ferreira's claim that he was targeted when he was a teenager because he was gay was speculative. The Board reasoned that Ferreira did not testify that his assailants said anything to him to indicate their motivation

5

for the attack. The Board also determined there was no evidence that the robbery was on account of Ferreira's sexual orientation. With regard to future persecution, the Board determined that the IJ properly considered the 2009 Human Rights Report and its observation that there is no Brazilian national policy of persecution of gay men, adding that the report also mentions gay rights ordinances and a program – "Rio without Homophobia" – that was created in May, 2008 in Rio de Janeiro. The Board also noted the reported drop in murders between 2009 and 2008. The Board agreed with the IJ that the evidence of record was insufficient to show that a pattern or practice of persecution exists in Brazil on the basis of sexual orientation. Moreover, the Board noted Ferreira's admission that he could live someplace other than his hometown, citing the hearing transcript, A.R. 98. Accordingly, the Board concluded that Ferreira had not shown a "clear probability" of persecution as required for withholding of removal and failed to establish the required nexus. The Board did not reinstate the voluntary departure order.

Ferreira has timely petitioned for review. We have jurisdiction under 8 U.S.C. § 1252(a)(1), (b)(1). He contends in his brief that the Board erred in determining that he did not prove past persecution because he showed that certain people when he was 15 lured him into the countryside in order to kill him because he was gay, and because he showed that hundreds of gay men are killed every year in Brazil with impunity because of their sexual orientation. Specifically, Ferreira argues that merely because he did not testify about what his attackers said regarding their motivation for the attack does not mean that there was no other circumstantial evidence indicating their homophobic motivation. See Petitioner's Brief, at 16. Moreover, substantial evidence in the record

6

supports his claim that the government of Brazil is unable or unwilling to control the killing of, and violence toward, gay men by private individuals and the police. See id. at 18. Last, Ferreira contends that the Board mistakenly analyzed his prospects for relocating within Brazil to a safer location, because he testified that there is violence against gay men even in the big cities of Brazil. See id. at 20.

We will deny the petition for review. Where the Board affirms the IJ and adds analysis of its own, we review both the IJ's and the Board's decisions. See Sandie v. Att'y Gen. of U.S., 562 F.3d 246, 250 (3d Cir. 2009). In Ferreira's case, the Board conducted a de novo review of the legal sufficiency of the evidence as it related to Ferreira's application for withholding of removal, and supplemented the IJ's analysis. The agency's factual determinations are upheld if they are supported by reasonable, substantial, and probative evidence on the record considered as a whole. Immigration & Naturalization Serv. v. Elias-Zacarias, 502 U.S. 478, 481 (1992). Under this deferential standard, the petitioner must establish that the evidence does not just support a contrary conclusion but compels it. See id. at 481 n.1; Gao v. Ashcroft, 299 F.3d 266, 272 (3d Cir. 2002).

Under INA § 241(b)(3)(A), 8 U.S.C. § 1231(b)(3)(A), withholding of removal is not discretionary: "the Attorney General may not remove an alien to a country if the Attorney General decides that the alien's life or freedom would be threatened in that country because of the alien's race, religion, nationality, membership in a particular social group or political opinion." As a threshold matter, the agency correctly noted that

7

Ferreira's sexual orientation can be the basis for a withholding of removal claim based on membership in a particular social group. See Amanfi, 328 F.3d at 730.

An alien may qualify for withholding of removal by demonstrating that he has suffered persecution in the past, in which case a rebuttable presumption of future persecution applies. See Garcia v. Att'y Gen. of U.S., 665 F.3d 496, 505 (3d Cir. 2011). See also 8 U.S.C. § 1231(b)(3)(C) ("In determining whether an alien has demonstrated that the alien's life or freedom would be threatened … the trier of fact shall determine whether the alien has sustained the alien's burden of proof" in the manner described in the asylum statute). If the rebuttable presumption of future persecution does not apply, an alien may meet his burden by showing a "clear probability" that his life or freedom would be threatened on account of a protected ground in the proposed country of removal. Immigration & Naturalization Serv. v. Stevic, 467 U.S. 407 (1984). Clear probability is defined to mean that it is more likely than not that an alien would be subject to persecution. See id. at 429-30. And, as with any claim of persecution, the acts must be committed by the government or forces the government is either unable or unwilling to control. See Garcia, 665 F.3d at 505. It is the applicant's burden to prove his case. 8 C.F.R. § 1208.16(b)(1).

To overturn the Board's decision, Ferreira must show that his evidence was "so compelling that no reasonable factfinder could fail to find" in his favor. Elias-Zacarias, 502 U.S. at 483-84. Ferreira has not made this showing. Persecution "denotes extreme conduct." Fatin v. Immigration & Naturalization Serv., 12 F.3d 1233, 1240 n.10 (3d Cir. 1993). It does not encompass "generalized lawlessness." Abdille v. Ashcroft, 242 F.3d

8

477, 494 (3d Cir. 2001) (addressing acts of private violence and xenophobic attitude of some South African citizens and politicians toward African immigrants). Regarding the incidents that occurred when Ferreira was a teenager, even if it might be inferred from the circumstances that the assailants involved sought to harm him because he was gay, it cannot be said that this is the only conclusion compelled by the record. The attacks also could represent opportunistic private acts of violence, and "[w]here the record supports plausible but conflicting inferences … [the agency's] choice between those inferences is, *a fortiori*, supported by substantial evidence." Hincapie v. Gonzales, 494 F.3d 213, 219 (1st Cir. 2007). Moreover, as the IJ noted, Ferreira was not harmed on either occasion, and his lack of confidence in the Brazilian police was insufficient to show that the police were unable or unwilling to intervene. See generally Toure v. Att'y Gen. of U.S., 443 F.3d 310, 316 (3d Cir. 1006) (applicant must show: (1) one or more incidents rising to the level of persecution; (2) that is on account of one of the statutorily-protected grounds; and (3) is committed either by the government or by forces the government is unable or unwilling to control). Accordingly, Ferreira was not entitled to the presumption of future persecution.

Substantial evidence supports the agency's conclusion that Ferreira failed to demonstrate a clear probability of future persecution in Brazil. "In evaluating whether it is more likely than not that the applicant's life or freedom would be threatened in a particular country on account of race, religion, nationality, membership in a particular social group, or political opinion, the [agency] shall not require the applicant to provide evidence that he or she would be singled out individually for such persecution if: (i) The

9

applicant establishes that in that country there is a pattern or practice of persecution of a group of persons similarly situated to the applicant on account of race, religion, nationality, membership in a particular social group." 8 C.F.R. § 1208.16(b)(2). Although the materials Ferreira submitted in support of his application indicate that violence against gay men, including even murder, continues to be a problem in Brazil, it does not establish that the Brazilian government is unable or unwilling to control those who are responsible for such violence. Ferreira presented no evidence that the Brazilian state police were involved in the unlawful killings of gay men. Moreover, the 2009 Human Rights Report notes anti-discrimination ordinances in the big cities, the existence of gay rights groups, and a nongovernmental organization's report that there was a drop in the murders from 2008 to 2009. One of Ferreira's articles discusses ongoing cooperation between the president of the Commission Against Impunity and Violence of the Legislative Assembly and the police in Rio de Janeiro, including an effort to provide training to police officers to deal with homophobic violence. A.R. 200-01. In Lie v. Ashcroft, 396 F.3d 530 (3d Cir. 2005), we held that, "to constitute a pattern or practice, the persecution of the group must be "systemic, pervasive, or organized." Id. at 537 (internal quotation marks removed). Ferreira's evidence was insufficient to meet this standard. And, "as with any claim of persecution, violence or other harm perpetrated by civilians against the petitioner's group does not constitute persecution unless such acts are committed by the government or forces the government is either unable or unwilling to control." Id. (internal quotation marks removed).

10

Last, Ferreira's argument regarding relocation within Brazil is unavailing. He presented insufficient evidence that he faces persecution in his home state of Minas Gerais and thus relocation is not clearly even necessary. Moreover, an applicant cannot demonstrate that his life or freedom would be threatened if the agency finds that the applicant could avoid a future threat by "relocating to another part of the proposed country of removal and, under all the circumstances, it would be reasonable to expect the applicant to do so." 8 C.F.R. § 1208.16(b)(2). Ferreira frankly admitted at his hearing that he could relocate to an urban and more progressive area of Brazil, notwithstanding his subjective fear that no place is safe for gay men, and it would be reasonable to expect him to do so.

For the foregoing reasons, we will deny the petition for review.

11